Dever vs. Akin.

JAMES T. DEVER, plaintiff in error, *vs.* WARREN AKIN, defendant in error.

D. was indebted to F. for slaves bought of him, and F. was indebted to P. for land, and by mutual agreement of the three, D. gave his note to T., the amount of the several debts being the same. This is a novation. The debt from D. to F. and from F. to T. are at an end by the new contract between D. and F., and the consideration of this contract is, on the part of T., the satisfaction of his debt on F., and on the part of D. the satisfaction of his debt to F.

2. It is not a good objection to a verdict as evidence that it does not show that it was rendered by a full jury, nor to a *fi. fa.* that it was issued by the Clerk's deputy and had no seal of that officer upon it. (R.)

3. When the parties are at issue on the facts set forth in an affidavit of illegality to an execution, the defendant in *fi. fa.* cannot set up new grounds of illegality not contained in his affidavit.

4. A charge of the Court that does not harm the party complaining of it, is not a ground for a new trial, even though the charge be wrong.

[See concurrence of WARREN J., and dissent of BROWN C. J.]

Slave debt. Constitutional law. Evidence. Before Judge BIGBY. Polk Superior Court. January Term, 1869.

In February 1862, Dodd obtained a judgment against Dever and afterwards transfered it to Akin. In December 1868, Akin, seeking to enforce payment, Dever filed an oath of illegality averring that the *fi. fa.* was proceeding illegally, because the consideration of the debt upon which said judg-

ment was founded (a note payable to one Tumlin), was slaves and that it was therefore against the Constitution of 1868 to enforce said *fi. fa.* Akin denied that such was its consideration, and upon this issue a trial was had.

Akin tendered as evidence the original petition, process and verdict, signed by one as foreman of the jury, and the *fi. fa.*, which was signed by a deputy clerk and had no seal of office on it. The verdict was objected to because it did not show that it was rendered by a jury of twelve men, and the *fi. fa.* was objected to because it was not signed by the Clerk, and for want of a seal or scroll in lieu of a seal. These objections were overruled, the papers were read to the jury and Akin closed. Defendants counsel asked for a verdict upon the idea that Akin had not made out his case. The motion was overruled.

Defendant then testified that the note on which the judgment was founded, was given for and in consideration of slaves bought by him from one Freeman, who requested him to give his note to Tumlin for the amount specified in this note, and defendant did so; Freeman owed Tumlin that amount for land and stock (as defendant understood from them.) Defendant understood that Tumlim had sold to Freeman land and horses and that Freeman was owing Tumlin the amount of the note which defendant gave to Tumlin at Freeman's request.

Tumlin's evidence in behalf of Akin was, that the note sued on was given to him in exchange for a note which he held on Freeman for the same amount, which was given to him by Freeman for land bought of Tumlin; he, Tumlin, understood at the time of the exchange, from Freeman and Dever, that Dever owed Freeman for slaves, and Dever gave Tumlin his note in place of Freeman's, which Tumlin held for the purchase-money of land.

The Court charged the jury that if Freeman bought land from Tumlin and owed him for it, and Dever bought slaves from Freeman and owed him for them, and, in this state of facts, it was arranged by and among the parties that Dever should give his note directly to Tumlin, then Dever stood in

the place of Freeman as to Tumlin, and the consideration of such note given by Dever to Tumlin was not slaves, but was the note held by Tumlin on Freeman which was given for land, etc., and, if such were the facts, the jury should find for Akin.   He further charged that the proviso of the 17th section of the fifth Article of the Constitution of Georgia, on which Dever rested, was unconstitutional and void.

The jury found against Dever.   His counsel complain that the Court erred in admitting said record and *fi. fa.*, and in each branch of said charge.

E. N. BROYLES, BLANCE & THOMPSON, UNDERWOOD & ROWELL, for plaintiff in error.

W. AKIN, L. E. BLECKLEY, for defendant in error.

McCAY, J.

1. The consideration of the note on which this *fi. fa.* was founded was in no sense, even according to the defendant's own testimony, the slaves which he had bought from Freeman.   The true consideration moving him to give the note, was the *debt* which he owed Freeman, and the consideration moving *Tumlin* to *take* the note was the *loss* to him of his debt against Freeman.   It was not the fact that Dever had gotten negroes from Freeman that induced him to give this note.   It was the fact that he owed Freeman a debt, and Freeman was willing to discharge that debt if Dever would give his note to Tumlin.   The fact that Dever's debt to Freeman was for negroes, had nothing to do with it.   If Tumlin, in consideration of Dever giving this note, discharged the debt which Freeman owed him, it makes no difference whether the debt from Dever to Freeman was a good or a bad debt. The note to Tumlin would be a valid debt, even if he, Dever, got no advantage at all from the transaction.   The *loss* to *Tumlin* of his debt against Freeman would be a sufficient consideration, would in fact be *the* consideration, and the rights of the parties in this case turn on just this question, to wit: do the facts of this case, as they appear in the record,

show, conclusively, that Tumlin, by the transaction as it is admitted to have occurred by both the witnesses, lost his right to go against Freeman on his debt for the land, etc. ?

Suppose after this transaction Tumlin had sued Freeman on the land debt, surely Freeman could have replied, in the very words which Tumlin uses in his testimony in this case: "You exchanged the debt you had on me for the debt I had on Dever, and you took his note for the amount," or he could have replied in the words of Dever: "Dever owed me and I owed you, at my request and with your consent, Dever gave his note to you for the amount." So, too, if Freeman had sued Dever, he could have replied: "at your request I gave my note to Tumlin, he has it, and if I pay you, I would still have to pay the note I gave to Tumlin."

It is contended, however, that notwithstanding Dever could successfully make this reply to an action by Freeman against him, that it is yet true that the note from Dever to Tumlin has no other consideration than the slaves, that the change of obligees does not change the consideration, that the only thing moving Dever to make the note was the negro slaves.

If there was no loss to Tumlin, I am inclined to think this reasoning would be correct. The mere fact that the debt from Dever to Freeman was at an end, would not alter the *consideration* of the new note. In other words, if Tumlin only took Dever's note as an additional security for his debt due from Freeman, however the debt from Dever to Freeman might be at an end, the consideration of the new note would be the same as the old one.

If Freeman should pay his debt to Tumlin, he would have a right to the possession and control of the Dever note. But it is to my mind absolutely conclusive, from the evidence, that the necessary legal effect of the transaction, as it is proven to have taken place, was to discharge the debt due from Freeman to Tumlin. Tumlin swears that he "exchanged" his debt on Freeman for the note on Dever, that he took Dever's note "in place" of Freeman's.

It is true Dever does not say so much. He merely says, that, Freeman owing Tumlin and he, Tumlin, at Freeman's

request, gave Tumlin the note for the amount.   He does not say whether there was any giving up by Tumlin of his debt on Freeman or not.

It is contended that, as it does not appear from Dever's account that there was a giving up by Tumlin of his debt on Freeman, it was the right of the jury to pass upon the question, and the Court erred in his charge, as he did not tell them that it must appear, from the proof, that Tumlin gave up his claim on Freeman.   It must be noticed, however, that Dever does not *deny* that Tumlin was to give up his claim on Freeman.   He simply says nothing about it.   He states the fact, that he owed Freeman and Freeman owed Tumlin and at Freeman's request he gave his note to Tumlin. , So far as the evidence of Dever goes, it has no bearing at all upon the question whether or not Tumlin gave up his debt on Freeman by affirmative agreement.   Dever's testimony does not deny it or affirm it.   But Tumlin's evidence is conclusive on this point.   He says he *exchanged* debts, he took Dever in *place* of Freeman.   He does not contradict Dever. He states a fact about which Dever says nothing, and about which, it is probable, at the time, he cared nothing.   The jury and the Court were bound to take this evidence for true. It was under oath, it was uncontradicted, it was in perfect harmony with the transaction.

Dever's statement that the note sued on was given for slaves, is necessarily to be taken with his own explanation of what he means by it; and when thus taken, it is in perfect harmony with Tumlin's statement.   He, Dever, states the facts so far as he knows them.   What is the effect of those facts is a question of law, and his statement that the consideration of *this* note was slaves, is a conclusion of law and not evidence.

The jury, under the uncontradicted facts, were bound to come to the conclusion that Tumlin gave up his debt on Freeman, because he so swore, and there was not a particle of evidence to the contrary.   If this be so, the facts of the case fully justify the charge of the Judge on this point. The consideration of the new note was wholy. different from

Dever *vs.* Akin.

either of the others. The *loss* to *Tumlin* of his debt on Free-man, and the *discharge* of Dever's debt to Freeman, was the consideration, and the jury was bound to so find.

But in our judgment it was not necessary to prove, affirmatively, an agreement between Tumlin and Freeman that the land debt should be discharged or satisfied in this way. The discharge, satisfaction, of both the old debts follows, by operation of law, the giving of a new note under the circumstance set forth in the charge of the Judge. This is not the case of a creditor taking from his debtor the note of a third person with nothing more. In that case, although the doctrine is disputed, (Chitty on Contracts, 661 and Notes,) yet the weight of authority and our Code undoubtedly is, that the debt is not discharged unless it be so expressly agreed. Peter vs. Beverly, 10 Pet. 567; Code sec. 2816. But here the three parties come together. Freeman declines to take Dever's note and Dever gives his note to Tumlin. Freeman has no evidence at all of any debt from Dever, and Tumlin has Dever's note payable to himself. Had the parties simply intended to strengthen Tumlin's security, it is hardly conceivable that it would have been agreed all round that Tumlin should be the payee in Dever's note. On the supposition that Tumlin keeps his debt on Freeman, the strange fact would exist, that Tumlin has two notes payable to *himself*, of different persons, for the same debt. Such a result is not presumable. It is contrary to the first principles of human nature. Had it not been the clear intent of the parties that there should be a novation, Freeman would have taken some showing. Assuming that the debt from Freeman to Tumlin still existed, we make Freeman guilty of the folly of consenting that Tumlin shall take Dever's note payable to himself and keep also his, Freeman's, note. This is the very case put by Butler, J. in Patlock vs. Harris, 3 T. R., 180. "Suppose A owes B £100, and B owes C £100, and the three meet, and it is agreed between them that A shall pay C the £100. B's debt is extinguished and C may recover that sum against A."

That case, as well as the case at bar, is not the mere trans-

Dever *vs.* Akin.

fer of a debt or delivery of the evidence of it from one man to another. It is an *agreement* that the debtor is willing to pay the debt to a third person. Without doubt, to make a good novation between three, the two original debts must be discharged. If the original debts still exist, it is no novation; but, like any other agreement, this discharge may follow, from the *nature of the transaction*, and it need not be proven that there was a distinct agreement to discharge. If the new promise is not a collateral one, that is, not a mere agreement to pay on the failure of the debtor, but to pay directly, then it is a novation.

2. As to the objections to the *fi. fa.* for want of a seal and because it is signed by the deputy clerk, etc. We think (and in this the Court is unanimous,) they were rightly overruled. They would not, in our judgment, be good if they had been taken in the affidavit.

3. But here the parties were at issue on the facts set forth in the affidavit, and it was not competent for the defendant, on the trial of that issue, to make new objections to the *fi. fa.* or judgment. The *fi. fa.* was not evidence to be introduced by the plaintiff. It was the paper, the Court's own order, which the affidavit undertook to impugn, a part of the pleadings, and was before the jury as a part of thereof.

4. Without doubt the Court erred in charging that the plea to the jurisdiction was not good. Had there been any possible dispute as to the effect of the "exchange" of debts, as testified to by Tumlin, this error of the Court would demand that the judgment be reversed. But if we have come to the proper conclusion as to the novation, this charge, though wrong, did no harm, because there was *no evidence* to support the plea; of the facts there is *no disptue.* Tumlin and Dever agree in every particular. It is true Tumlin adds a fact which Dever says nothing about, but which is perfectly in harmony with Dever's statements. Dever's *assertion* that *this* note was given for negroes is to be taken with *all* he says. Taking *all* he says, we are of the opinion that, as a conclusion of law, it was not so given, and there was, therefore, *no evidence* for the jury to consider under the plea.

Judgment affirmed.

Dever *vs.* Akin.

WARNER, J., concurring.

It appears from the record, that in the year 1862, a judgment was obtained in favor of Dodd, as bearer, against Dever, on a promissory note made by him on the 10th day of December, 1860, payable to William Tumlin, or bearer, for $1071 34, which judgment was assigned to Akin, the plaintiff. On the 1st of December, 1868, the defendant made an affidavit of illegality to the execution issued on said judgment, on the ground that the note on which the judgment was founded was given for negroes. On the trial of the issue formed upon this affidavit of illegality in the Court below, the following facts are disclosed by the record: Dever owed Freeman the amount of the note for negroes purchased of him. Freeman was indebted to Tumlin the same amount for land purchased from him, and at the *request* of Freeman, Dever, the defendant, executed his note to Tumlin, all parties consenting to this arrangement. Tumlin swears that he received Dever's note in exchange for Freeman's note given to him for land, Dever being indebted to Freeman for negroes, that he took Dever's note in *place* of Freeman's note, which was given to him for land. The Court charged the jury "that if Freeman bought land from Tumlin and owed him for it, and Dever bought negroes from Freeman and owed him for them, and in this state of facts it was arranged by and among the parties, so that Dever gave his note immediately to Tumlin, then Dever stood in the place of Freeman to Tumlin, and that the consideration of the note given by Dever to Tumlin was not a slave or slaves, but the consideration of the note was the note held by Tumlin against Freeman which was given for land, and that if the jury believe the facts to be as above supposed, it would be their duty to bring in a verdict in favor of the plaintiff in *fi. fa.* and set aside the illegality." According to the facts as disclosed by the record, there was a *novation* of the original contract between Freeman and Dever by the introduction of a new party, to whom Dever obligated himself to pay the amount due by Freeman to Tumlin for land, and as declared

by the 2682d section of the Code, the original contract between Freeman and Dever, the consideration of which was a slave or slaves, *was at an end;* and being at an end, it was in contemplation of law *extinguished;* and the charge of the Court as to the law applicable to the facts of the case was right, and the verdict of the jury setting aside the affidavit of illegality was also right under the law which it was the duty of the Court to administer. The Court left the question with the jury as to whether there had been a *novation* of the original contract as between Dever and Freeman by the introduction of Tumlin, a new party, to whom Dever obligated himself to become paymaster for what Freeman owed Tumlin, and if such were the facts of the case, under the evidence, there was no illegality, on account of the consideration of the original contract between Dever and Freeman having been negroes, to be considered by them; under the law, that original contract was at an end—that is to say, the original contract between Dever and Freeman, the consideration of which was slaves, was by *operation of law* at an end, extinguished. If the jury had found a verdict sustaining the affidavit of illegality upon the uncontradicted facts in the record, the Court would have been bound to have granted a new trial, because the verdict would then have been contrary to the law as applicable to the undisputed facts in the case. Whether the original contract between Dever and Freeman was at an end or not, was a question of *law* for the Court, and not a question of *fact* for the jury.

What does the law declare shall be the rights and liabilities of the parties, when Dever, at the request of Freeman, gave his note to Tumlin for the debt due by Freeman to Tumlin for his land which Freeman had purchased of him? Clearly, that the debt due by Dever to Freeman for negroes shall be at an end, satisfied and extinguished. Freeman could not afterwards recover on that contract against Dever, for the reason that the law *cancelled* it, and the verdict of a jury is not necessary to find the fact that it is cancelled, when the law declares that the contract shall be cancelled and at an end upon an undisputed state of facts. It is not the province

of the jury to find what is the law of the case; and there is no dispute as to the facts which, in law, put an end to the contract between Dever and Freeman. The verdict of a jury could not alter or change the *legal status* of the parties as to the original contract between Dever and Freeman under the undisputed facts of this case. And if the jury had found a different verdict, it would have been the duty of the Court to have set the same aside as having been contrary to law, even if the consideration of the original contract between Dever and Freeman *was slaves*—the consideration of that original contract which was at an end, had nothing to do with the question before the Court.

BROWN, C. J., dissenting.

I am unable to agree with the majority of the Court in the judgment rendered in this case. The seventeenth section of the fifth Article of the Constitution of this State declares that "no Court or officer shall have, nor shall the General Assembly give, jurisdiction or authority to try or give judgment on, or enforce any debt, the consideration of which was a slave or slaves, or the hire thereof." This Court has held, after solemn argument, that the above section of the Constitution is not itself unconstitutional, but is valid and binding.

The defense set up by Dever in this case, by way of illegality to the execution, was, that the debt upon which the judgment was obtained could not be enforced under the above provision of the Constitution, because the consideration of it was slaves. The fact whether the consideration of the debt was a slave or slaves, was the issue, and the only issue, which could be properly submitted to the jury on the trial, and it was the duty of the Judge to have submitted it fairly and impartially to their consideration. Was it done? I think not.

The Court distinctly charged the jury that the above recited provision of the Constitution of this State "*was unconstitutional and void,* and if the consideration of the note was a slave or slaves, the Court *has* jurisdiction, and the jury

Dever *vs.* Akin.

should find a verdict against the illegality." This charge was the very opposite of the decision of this Court, and it withdrew from the consideration of the jury all evidence introduced by Dever in support of his rights under the Constitution of the State and the decisions of this Court, by instructing the jury in effect to find against him if they should believe that the defense set up by him, that the note was given for negroes was fully established. In other words, the Court usurped the powers of the jury, and virtually instructed them that they must find against Dever, no matter what they might think of the evidence produced by him in support of his rights.

If there was *any* evidence before the jury going to prove that the note was given for slaves, this charge was wholly unauthorized, and this Court should not hesitate to set aside the verdict, and order a new trial in the Court below. Was there any such evidence? Mr. Dever sworn, as a witness, whose credibility was not pretended to be questioned, stated, that the note sued on was given *for and in consideration of negroes purchased by defendant from Thomas H. Freeman,* that *Freeman requested* him to give his note to Tumlin for the amount specified in said note, which he did. Freeman was indebted that amount to Tumlin for land and stock, as he understood from the parties. Defendant gave his note to Tumlin *as requested,* and the *consideration of the note* so given was the *negroes* purchased from Freeman. Defendant never purchased any negroes from Tumlin, and the consideration of Freeman's indebtedness to Tumlin was land and stock according to the understanding of defendant. He further admitted that he understood from William M. Tumlin and Freeman that Tumlin had sold land and horses to Freeman, and that Freeman was owing Tumlin the amount of the note he gave Tumlin, and that he supposed he gave the note to Tumlin for the *amount* Freeman owed him for land and horses.

This testimony contains not one word about the extinguishment of the debt due by Freeman to Tumlin. For any thing that appears, the note given by Dever to Tumlin, at *Freeman's request,* may have been intended merely as *collat-*

*eral security.* Here there is no sufficient evidence of an extinction of the debt which Freeman owed Tumlin, to sustain the charge of the Court. Taking this evidence alone, I think it would have been the duty of the jury to have found that the note was given, as the witness swore it was, for negroes, and that the Court manifestly erred in refusing to permit the jury to consider this evidence, and if they were satisfied it established the fact that the note was given for slaves, to find *for* the illegality.

I am aware that William M. Tumlin, the payee and endorser of the note, testified that it was given in exchange for a note he held on Freeman, and I do not pretend to say, what weight this evidence should have had with the jury in satisfying them that there was a novation or substitution, and that the consideration of the note was not negroes, but the extinguishment of the debt due by Freeman to Tumlin. I simply say that the evidence on both sides should have gone to the jury, under a proper charge of the Court, as to what constitutes a novation or substitution, as that was insisted upon by the plaintiff in the judgment, and they should have been left to find the facts. It matters not, therefore, so far as the correctness of my position is concerned, what Tumlin swore. The jury may or may not have believed him. It was their exclusive province to weigh the evidence, and to determine upon the credibility of the witnesses. The case is fully made out in favor of my view of it whenever I show that there was *any evidence*, however much the evidence on the other side may have preponderated, upon which the jury might legally find a verdict for Dever, if they had disbelieved and rejected *all* the evidence on the other side; and I think there was ample evidence on Dever's side to have sustained a verdict in his favor if it had been submitted to the jury without other evidence, or if they had not believed the witness on the other side. This is the proper test.

But it is insisted by the majority of the Court that the evidence made so clear a case of novation as to leave nothing for the jury to decide. This is not a question of *novation*, but a question of *consideration*. The Constitution declares

Dever *vs.* Akin.

that no debt shall be enforced, the *consideration* of which was a slave or slaves, etc. Now an arrangement by which Dever gave Tumlin his note, at *Freeman's request,* for slaves purchased of Freeman, though it may be one kind of novation, does not make the note collectable unless there was such an agreement between the parties as created a *new consideration* for the note given by him to Tumlin. If the consideration of the note was still the slaves which he purchased of Freeman, the note cannot be enforced. The fact that Freeman sold him the slaves, and requested him to give the note for them to Tumlin, can make no difference if the consideration of the note was still the slaves.

As is well known to every lawyer, a consideration is necessary to support a contract, and a consideration is valid if any benefit accrues to him who makes the promise, or any injury to him who receives it: Code, section 2698. If there be a valid consideration for the promise, it matters not from whom it moved, the promisee may sustain his action, though a stranger to the consideration: Code, section 2705. It will hardly be insisted that any benefit accrued to Dever by the arrangement. He gave his note to Tumlin in place of Freeman, at Freeman's request, and for his benefit. What did Dever get for the notes? What benefit accrued to him? Nothing but the slaves. Then there is no other consideration moving to Dever but the slaves. Did injury accrue to Tumlin? That depends entirely upon the fact whether he released the debt which Freeman owed him. If he did not, he was benefitted rather than injured, as he got two securities for his debt in place of one. That was a question for the jury, and taking Dever's side of the testimony, they might have found that such was the fact, as there is nothing in his testimony inconsistent with the fact that the debt due from Freeman to Tumlin still existed, and that the note given by him to Tumlin, at Freeman's request was only an additional security for the debt due him from Freeman. Then there is nothing here inconsistent with the idea that the note was given for and in consideration of the slaves purchased by Dever from Freeman. If the evidence submitted on the

other side contradicted that view, the jury, and not the Court, were the proper judges of that fact.

But section 2882 of the Code is relied upon by the other side. It is in these words: One simple contract as to the same matter, and on no new consideration, does not destroy another between the same parties, but if new parties are introduced by novation, so as to change the person to whom the obligation is due, the original contract is at an end. So it may be, and still the obligation may rest alone upon the *original consideration.* I owe A $100 for a horse. A owes B a like sum, and agrees with B to give him my note as collateral security, and requests me to give B my note for the amount I owe him, for his accommodation. Here is a novation. Under this section, a new party is introduced, and the person to whom my note is due is changed, but no new consideration has moved to me, as no *benefit* has accrued to me, and no *injury* to B, by the change. Therefore, the horse is still the *consideration* for my promise. But B, the promisee, in the language of the Code, may " sustain his action, though a stranger to the consideration."

Again, it is insisted that the agreement between these parties that Dever should give his note to Tumlin for the debt which he owed to Freeman, was a novation, and that the *legal effect* of this novation is to extinguish the debt due by Dever to Freeman, and the debt due by Freeman to Tumlin, *without any agreement* between the parties that such shall be its effect. In other words, that the law works such extinguishment of the original debt without any express agreement or consent of the creditor that it shall have that effect. And I may remark, that it is necessary to establish this doctrine before there is even a plausible pretext to sustain the ruling of the Court below in refusing to allow the jury under any circumstances to find for Dever. But is this sound law? Clearly not. The very reverse is true. Pothier on Obligations, volume 1, side page, 550, discusses this question, and lays down the rule clearly and distinctly. He says: " In order to constitute a novation, the consent of the creditor, or of some person having authority from him, or a quality to

make a novation for him, is requisite. By the ancient *Roman* law, such consent might easily be presumed, but according to the Constitution of *Justinian,* in the late law, such intention should be *positively declared,* without which there could be no novation, and the new engagement which is contracted, is to be considered rather as having been made to confirm and accede to the first than to extinguish it. The reason of this law is, that a person should not easily be presumed to abandon the rights which belong to him. Therefore, as a novation implies an abandonment by the creditor of the *first claim,* to which the *second is substituted,* it ought not to be easily presumed, and the parties ought *expressly to state it.*"

This is the rule of the civil law from which we have derived the doctrine of novation, which may be of different sorts. Parsons on Contracts, pages 217, 218, refers to the civil law rule, and lays down the common law rule as follows: "By the civil law, any new contract entered into *for the purpose,* and with the effect, of dissolving an existing contract, was regarded as a novation, and in the above case the civil law would recognize two sorts of contracts of novation; the contract by which A is discharged from his liability to B, by contracting a new obligation to C, and the novation by which B would be discharged from his obligation to C, by procuring A as a new debtor. This distinction has not been preserved in the common law, and the rights and obligations of the parties in both cases are governed by the same rule. It will be seen, (he adds,) from the statement of the cases in the note, that the principle deducible from them is, that if A owes B, and B owes C, and it is agreed by these three parties that A shall pay this debt to C, and A is by this agreement discharged from his debt to B, and B is *also discharged* from his debt to C, *then* there is an obligation created from A to C, and C may bring an action against A in his own name."

On page 220, he adds: "An order addressed by a creditor to his debtor, directing him to pay the debt to some one to whom the creditor is indebted, operates as a substitution of the new debt for the old one where it is presented to the debtor, and assented to by him, and not before, and also pro-

vided, this third party *gives up* his original claim against the first creditor, and not otherwise;" and in a note on the next page, it is said: "And the creditor must also consent to take the new debtor as his *sole* security, and to *extinguish* his claim against his former debtor."

The novation recognized by the common law, therefore, requires when A owes B, and B owes C, and it is agreed that A shall pay C, that both the debt from A to B, and the debt from B to C be extinguished, and that C take A as his debtor. When this is done the extinguishment of the debt from B to C is the consideration of the new promise made by A to C. But if there is no such extinguishment, there is no *new consideration* for the promise made by A to C, and it rests alone on the original consideration which moved from B to A.

As the common law rule prevails in Georgia we must construe section 2682 of the Code with reference to that rule. Adopting that rule of construction, I think it quite clear that there was no new consideration for the promise of Dever to pay Tumlin, unless it was "expressly agreed" by and between the three parties, that the debt which Freeman owed Tumlin should be extinguished. The extinguishment of that debt would have been a new consideration for Dever's promise to Tumlin. If the debt were not extinguished, Tumlin might have an action against Dever upon the promise which Dever made him at Freeman's request, but that promise would still rest upon the *consideration* which moved from Freeman to Dever. In other words, upon the slaves. There being in that case, a valid consideration for the promise at the time it was made, it matters not from whom it moved. Tumlin, as the promisee, might maintain his action "though a stranger to the consideration:" Code, section 2705. And as jurisdiction has since been denied to the Courts to enforce a contract, founded as this was, Tumlin's right of action in the Courts of this State ceased, and neither he nor his assignees have a right to enforce the collection of the claim, resting, as it does, upon slaves as its only consideration.

For these reasons my mind is entirely satisfied that Dever

has been denied the right of having his case fairly submitted to the jury, that he had evidence before the jury upon which they might have found in his favor, which, under the charge of the Court, they were not permitted to consider, and that the verdict ought to be set aside and that a new trial ought to be granted.