## FORSYTH MANUFACTURING COMPANY *v.* CASTLEN.

<table>
<tr><td>112</td><td>199</td></tr>
<tr><td>117</td><td>579</td></tr>
<tr><td>112</td><td>199</td></tr>
<tr><td>118</td><td>879,</td></tr>
<tr><td>112</td><td>199</td></tr>
<tr><td>119</td><td>853</td></tr>
<tr><td>112</td><td>199</td></tr>
<tr><td>122</td><td>270</td></tr>
<tr><td>123</td><td>9</td></tr>
<tr><td>112</td><td>199</td></tr>
<tr><td>f127</td><td>300</td></tr>
<tr><td>f128</td><td>698</td></tr>
<tr><td>112</td><td>199</td></tr>
<tr><td>130</td><td>675</td></tr>
</table>

1. An executory agreement for the sale of goods to be delivered at a future day is valid, though at the time the seller has not the goods in his possession, has not contracted to purchase them, and has no expectation of acquiring them otherwise than by producing, manufacturing, or purchasing them at some time before the day of delivery.

2. Such a transaction is not rendered invalid by the provisions of section 3537 of the Civil Code, unless it is made to appear that neither of the parties contemplated an actual delivery of the goods, and that it was the intention of both that there should be no actual delivery but that on the day fixed for delivery there should be a settlement of their differences, based on the market value of the goods on that day. In that event the transaction would be a pure speculation upon chances, but not otherwise.

3. When a contract is valid upon its face, or, when taken in the light of the circumstances surrounding the parties at the time it was entered into, appears to be valid, it is incumbent on him who attacks the contract to show its invalidity.

4. Although at the time an executory agreement for the future delivery of goods was entered into the seller intended to fulfill his contract by delivery of goods produced by him, and this fact was known to the buyer, the seller would have a right to deliver, and the buyer would be bound to receive, any goods of the character and quality stipulated in the contract, when it was not agreed that the goods delivered must be produced by the seller.

5. In determining whether an executory agreement for the future delivery of cotton was valid, as one in which an actual delivery of cotton was contemplated, or whether the transaction was a pure speculation on chances, evidence that the seller was a producer of cotton and had at the date of the agreement cotton planted and growing was relevant.

6. When a contract appears to have been reduced to writing, before parol evidence can be admitted to show a collateral agreement, it must appear, either

from the contract itself or from the attendant circumstances, that the contract is incomplete and that what is sought to be shown as a collateral agreement does not in any way conflict with or contradict what is contained in the writing.

7. An executory agreement for the future delivery of goods of a specified class and quality is, in legal effect, an agreement for the delivery of any goods of that class and quality, no matter where made or by whom produced; and when such an agreement is reduced to writing, parol evidence is not admissible to show that there was a collateral agreement between the parties that the goods specified in the contract should be produced by the seller.

8. There was no error in overruling the demurrer to the petition. The rulings on evidence which were complained of were free from error. The evidence authorized the verdict; and nothing appears in the record which warrants a reversal of the judgment refusing a new trial.

Argued November 2, — Decided November 26, 1900.

Action on contract. Before Judge Reagan. Monroe superior court. February term, 1900.

*Stone & Williamson, Persons & Persons, Bloodworth & Ruther-ford*, and *Hardeman, Davis & Turner*, for plaintiff in error.

*Robert L. Berner* and *Cabaniss & Willingham*, contra.

Cobb, J. Castlen brought suit against the Forsyth Manufacturing Company upon a contract of which the following is a copy: " This agreement made and entered into this the 25th day of April, 1898, by and between the Forsyth Manufacturing Company of the first part, and A. W. Castlen of the second part, both of the county of Monroe and the State of Georgia, witnesseth: that the party of the first part hereby agrees to pay the party of the second part six cents per pound for one hundred and fifty bales of lint-cotton to be delivered at the warehouse of said Forsyth Manufacturing Company on the Central Railroad just above Forsyth, in good merchantable order, at times below set forth. The party of the second part hereby agrees to deliver at the place above designated one hundred and fifty bales of lint-cotton, said cotton to be delivered to the Forsyth Manufacturing Company as follows: fifty bales in September, fifty bales in October, and fifty bales in November, 1898, at the place above set forth, and in good merchantable order, all bales to weigh more than 450 pounds each; and should the party of the second part fail or refuse to furnish the full amount of fifty bales each month as above set forth, then the second party forfeits one half cent per pound for each pound not delivered at end of each month of the fifty bales." This contract was signed by both parties

therein mentioned. At the trial it appeared that Castlen was a cotton-planter, that this fact was known to the president of the defendant company, and that at the date the contract was entered into Castlen had upon his land cotton planted and growing. It also appeared that Castlen had delivered to the defendant one hundred bales of cotton, which were raised upon his place, and which were received by the defendant and paid for under the contract. Six bales raised on the plaintiff's place were delivered and received in due time, but have never been paid for. The plaintiff tendered to the defendant, in November, a sufficient number of bales to complete the contract; but the defendant company refused to receive and pay for these bales, on the ground that they were not raised upon the land of Castlen. This action is brought to recover for the six bales of cotton which were received and not paid for, and for damages on account of the failure to receive and pay for the number of bales tendered in November which were necessary to complete the contract. The jury under the charge of the court returned a verdict in favor of the plaintiff. The defendant made a motion for a new trial, which was overruled. The case is here upon a bill of exceptions assigning error upon the decision of the judge overruling a demurrer to the petition, and upon the judgment refusing to grant a new trial.

1. As a general rule a person who owns property has the right to dispose of it to another. When the one who has the right of property is in actual possession, this right of disposition is subject to few restrictions. In order to make a complete sale of property whereby the title would pass from the seller to the buyer, it is necessary that the thing which is the subject of the sale should have an actual or potential existence at the date of the sale. It has been held that a mortgage upon a crop of cotton is valid, if at the date of the mortgage the cotton be planted and growing. *Crine* v. *Tifts*, 65 *Ga.* 644; *Stephens* v. *Tucker*, 55 *Ga.* 543. See also Jones *v.* Richardson, 10 Met. (Mass.) 488; Van Hoozer *v.* Cory, 34 Barb. 9. On the other hand, it has been held that a sale of a certain number of bales of cotton of a crop of a given year, made before the seed were planted, passed no title to the vendee, for the reason that nothing can be the subject of bargain and sale which has no actual or potential existence at the date of the sale, and until the crop is actually growing, or at least until the seed are planted, the crop can not be

said to have even a potential existence. *Noyes* v. *Jenkins,* 55 *Ga.* 586. See also *Redd* v. *Burrus,* 58 *Ga.* 574; *Huntington* v. *Chisholm,* 61 *Ga.* 270; Wheeler *v.* Wheeler, 2 Met. (Ky.) 474; Low *v.* Pew, 108 Mass. 347, s. c. 11 Am. Rep. 357. If a contract provides for the delivery by one party to another of that which is not only not in the possession of the person contracting to sell but which has no existence, either actual or potential, while the contract can not be upheld as a sale, the parties to the same may be bound by the terms thereof as constituting an executory agreement to sell. While there can be no sale of an article which is not in existence, it is legally possible for one to enter into an executory contract to sell such an article in the future when it does come into existence. 2 Kent's Com. (14th ed.) *468 et seq., *492 (note). See also Newmark, Sales, § 68, p. 93. The right to enter into a contract for the sale of a thing which was to come into existence in the future was recognized by the civil law. 1 Domat's Civil Law (Cushing's ed.), § 310; McKeldey's Roman Law, § 400. The rule of the civil law, that future things might be the subject of an obligation, was, however, subject to the exception which prohibited " dealers from buying corn, or hay, before the harvest, wool before the shearing, &c.," and such contracts were declared to be void. 1 Pothier, Obligations, top p. 170. The distinction between a contract for the sale of goods and an executory agreement for future delivery is clearly drawn in cases where the question arose as to whether contracts of the latter character were within the 17th section of the statute of frauds. It has been held that contracts for the sale of goods, wares, and merchandise are not excluded from the operation of this section of the statute merely because they are executory. And also that contracts for the sale of goods not in esse at the time, and of a peculiar character so as to be unsuited to the general market, to be made by the work and labor and with the material of the vendor at the instance of the purchaser, are not within the section. *Cason* v. *Cheeley,* 6 *Ga.* 554. See also Benj. Sales (7th Am. (Bennett's) ed.), § 92 et seq.

The right of a person to enter into a contract to deliver property not in his possession, relying upon making a future purchase in time to fulfill his undertaking, was doubted by Lord Tenterden (then Chief Justice Abbott) in Lorymer *v.* Smith, 8 E. C. L. 1, where he took occasion to say that it was a mode of dealing not to be encouraged. That case involved a contract for the sale of wheat.

In Bryan v. Lewis, 21 E. C. L. 775, which involved a contract for the future delivery of nutmegs, where the question of the validity of such a contract was directly before the court, Lord Tenterden adhered to the opinion expressed in Lorymer v. Smith, and made a direct ruling to the effect, that, "If a man sells goods to be delivered on a future day, and neither has the goods at the time, nor has entered into any prior contract to buy them, nor has any reasonable expectation of receiving them by consignment, but means to go into the market and buy the goods which he has contracted to deliver, he can not maintain an action for damages for non-performance of the contract." Mr. Tiedeman, in his work on Sales, § 302, says: "If the common-law offense of *regrating* were still recognized in the criminal law, all contracts for future delivery may be open to serious objection." See also Tiedeman's Lim. Police Power, § 95; Tiedeman's State and Federal Control of Persons and Property, § 107. The common-law offense of regrating was defined to be: "The buying of corn, or other dead victual, in any market, and selling it again in the same market, or within four miles of the place." 4 Black. Com. 159. The decision in Bryan v. Lewis was rendered in 1826, and the common-law offense of regrating was not abolished in England until 1844. 1 Bish. New Crim. Law, § 518 (2). And as the court in that case, as well as in the case of Lorymer v. Smith, had under consideration a contract for the sale of an article of the character described in the definition of regrating, these decisions might be upheld upon the suggestion made by Mr. Tiedeman. But they have not been given this restricted meaning, and there is nothing in the language of the Chief Justice in either case which would indicate that he intended such a restricted meaning to be given it. In Hibblewhite v. M'Morine, decided in 1839, 5 M. & W. 462, it was held that "A contract for the sale of goods, to be delivered at a future day, is not invalidated by the circumstance that, at the time of the contract, the vendor neither has the goods in his possession, nor has entered into any contract to buy them, nor has any reasonable expectation of becoming possessed of them by the time appointed for delivering them, otherwise than by purchasing them after making the contract." That case involved a contract for the sale of shares of stock in a railway company. The dictum of Lord Tenterden in Lorymer v. Smith and the ruling in Bryan v. Lewis were both declared to be unsupported

by authority and unsound in principle.    The decision in Hibble-white *v.* M'Morine was cited approvingly in Mortimer *v.* M'Callan, 6 M. & W. *76, a case decided in 1840.

The decisions just referred to adhered to the rule which was recognized in England, that there could be a valid executory agreement for the future delivery of an article which the seller expected to procure in time to fulfill his undertaking — a rule probably derived from the civil law, and which has not been departed from in England, so far as we have been able to ascertain after a diligent investigation, except in the two instances above referred to.    This rule has been generally recognized by the American courts.    Mr. Tiedeman says that "It may be stated, as the American rule, that *bona fide* contracts for future delivery of goods are not invalid because at the time of the sale the vendor has not in his actual or potential possession the goods which he has agreed to sell."    Tied. Sales, § 302, p. 486.    "A person may make a contract for the sale of personal property for future delivery which is not his at the time. Merchants and traders often do this.    A contract for the sale of personal property which the vendor does not own or possess, but expects to obtain by purchase or otherwise, is binding if an actual transfer of property is contemplated."    Beach, Mod. Law Con. § 1468. See also 14 Am. & Eng. Enc. Law (2d ed.), pp. 606, 607, and notes. In Hawley *v.* Bibb, 69 Ala. 52, 55, Mr. Chief Justice Brickell says: "The effect and validity of contracts for the sale and future delivery of personal property, of which the seller has not possession or ownership at the time of the sale, has been the subject of much contestation and litigation in the courts of this country and of England, of recent years.    Since the decision of the Court of Exchequer in Hibblewhite *v.* M'Morine, 5 Mees. & Wels. 462, departing from and overruling the opinion expressed by Lord Tenterden in Lorymer *v.* Smith, B. & C. (8 E. C. L.) 1, and in Bryan *v.* Lewis, Ryan & Moody (21 E. C. L.), 386, the authorities generally have concurred that a contract for the sale of goods to be delivered at a future day is valid, though at the time the vendor has not the goods in his possession, has not contracted to purchase them, and has no expectation of acquiring them otherwise than by a purchase at some time before the day of delivery."    In Conner *v.* Robertson, 37 La. Ann. 814, s. c. 55 Am. Rep. 521, Mr. Justice Fenner, after an exhaustive examination of the English and American cases in reference to this

subject, comes to the conclusion that the true rule to be derived from these cases is, that an executory contract for the sale of goods for future delivery is not invalid by reason of the fact that at its date the vendor had not the goods, and had not entered into any arrangement to buy them, and had no expectation of receiving them unless by going into the market and buying them. We think it can be safely assumed that this was the rule of force in this State when the Code of 1863 was adopted. The question to be now determined is whether there is anything in the code which changes this rule. The code declares that wagering contracts can not be enforced. Civil Code, § 3668. A contract for the future delivery of goods is not a wagering contract, when actual delivery of the goods is contemplated by either one or both of the parties. Conner v. Robertson, supra. If, however, it is the intention of both parties to the contract that the goods shall not be actually delivered but that there shall be a settlement of the differences between them, according to the market price of the article, on a given day, such a contract would be a wager and not enforceable by either party. 2 Beach, Mod. Law Con. § 1468; Conner v. Robertson, supra; 14 Am. & Eng. Enc. Law (2d ed.), 610, 611; *Alexander* v. *State*, 86 *Ga.* 246, and cases cited; *Walters* v. *Comer*, 79 *Ga.* 796; *Thompson* v. *Cummings*, 68 *Ga.* 124, and cases cited.

Section 3537 of the Civil Code declares: "A bare contingency or possibility can not be the subject of sale, unless there exists a present right in the person selling, to a future benefit; so a contract for the sale of goods to be delivered at a future day, where both parties are aware that the seller expects to purchase himself to fulfill his contract, and no skill and labor or expense enters into the consideration, but the same is a pure speculation upon chances, is contrary to the policy of the law, and can be enforced by neither party." Was this section intended simply as a declaration of the existing law at the time the code was adopted, or was it the intention of the General Assembly to alter the rule which at that time was well settled in regard to contracts for the sale of goods for future delivery? In arriving at the meaning of a section of the code, the rule to be followed is well settled, and declares that a section of the code shall not be so construed as to alter the law as it existed at the date of the adoption of the code, unless such a construction is demanded by the terms of the section, and in cases

where its language is ambiguous or of doubtful meaning that construction should be placed upon it which would keep in force the old law, rather than that which would bring into existence a new rule. See *Mitchell* v. *Ga. & Ala. Ry.*, 111 *Ga.* 760, and cases cited. The first clause of the section quoted declares that a bare contingency or possibility can not be the subject of a sale, unless there exists a present right in the person selling, to a future benefit. To this extent the section simply declares what was the rule at common law, and which has been recognized in this State, that there can be no valid sale of anything which has neither an actual nor potential existence. There is nothing in this language which is to be construed as declaring that an executory agreement for the sale of an article which had neither an actual nor potential existence would be void. The remaining portion of the section declares under what circumstances a contract for the sale of goods to be delivered at a future day would be contrary to the policy of the law and not enforceable by either party. Construing this part of the section as a whole and in the light of the law from which it was evidently derived, the conclusion is reached that the intention of the General Assembly, in adopting the section in the language in which we find it, was to keep in force the rule which was well settled at the time the code was adopted, that a contract for the sale of goods for a future delivery was valid, if both or either of the parties contemplated an actual delivery at the time the sale was made; and that in order to render invalid an executory agreement to sell an article of which the seller has neither the actual nor potential possession, it must appear that the transaction was a pure speculation upon chances and so intended by both parties. If there was skill or labor to be employed, or expense to be incurred, by the seller, and at the same time he intended to deliver the goods themselves, the contract would not be a pure speculation upon chances, notwithstanding both parties were aware that the seller intended to purchase in order to fulfill his undertaking. We are fully aware of the difficulty which confronts us in determining the meaning of this section, and its meaning is by no means clear; but, construing the section in the light of the well-settled law of force when the code was adopted, and applying the rule of construction above referred to, we have reached the conclusion that the safer course would be to give to the section the meaning which would make it simply

declaratory of the well-settled rule of law. This construction is more satisfactory to our minds when we consider that any other construction than that above placed upon it would be to declare that the codifiers intended to change the rule of the common law and make the law of Georgia the rule laid down by Lord Tenterden, which seems never to have been followed, and which had been, at the date of the adoption of the Code of 1863, expressly repudiated by both the English and American courts. Certainly the codifiers of that code did not intend to make the law of Georgia a decision of an English judge, rendered in 1826, which was, at the time the code was adopted, uniformly declared to be unsound in principle and unsupported by precedent.

The rule of the common law in regard to contracts of this character was founded in wisdom, and commercial transactions which are permitted under it are of daily occurrence; and this is an additional reason why, in a case where the intention of the lawmakers is doubtful, a construction should be placed upon the law which would not replace a wise and salutary rule of law with one which in its operation would be harmful and disastrous. In *Swift* v. *Powell*, 44 *Ga.* 123, it appeared that A agreed with B to deliver one hundred bales of cotton at twenty-one cents per pound to him, at any time within sixty days, and that B knew that A expected to purchase to fulfill his contract, which was reduced to writing and recited that it was for value received, and the parties further agreed to put up $1,000 each, which they did, to cover the losses of such contract. It was held that, inasmuch as the original contract was reduced to writing, and recited a consideration, there was sufficient under the facts to take the contract out of the operation of the section of the code above quoted. Mr. Chief Justice Lochrane in the opinion said: "The written instrument entered into between the parties, reciting a consideration for the agreements entered into, lifted the case, in the opinion of the court, out of the operation of the code, section 2956 [Civil Code, § 3537], and gave to it the effect of a legal and binding contract, which courts would recognize and enforce." The effect of this ruling seems to be, that if there is a consideration for the contract, the section under discussion does not apply. In *Branch* v. *Palmer*, 65 *Ga.* 210, it was held that a sale of cotton for future delivery, where both parties knew that the vendor expected to purchase to fulfill his contract, and to put no skill, labor, or ex-

pense therein, but that it was a speculation on chances, would be illegal; but if the cotton was to be bought and delivered at once, and skill, labor, or expense entered into the contract, it would be valid.    That decision is not directly in point in the question now under consideration, but the reasoning upon which it is founded is rather in line with the reasoning upon which the conclusion we have arrived at is based, that is, that to render the contract invalid it must appear that it was the intention of both parties that it was to be a pure speculation upon chances; and in that case the fact that the cotton was to be delivered at once, and there was skill, labor, and expense in bringing about this purchase, negatived any inference that the parties intended a speculation upon chances.    In *Thompson* v. *Cummings*, 68 *Ga.* 124, and in *Warren* v. *Hewitt*, 45 *Ga.* 501, it was held that a speculation in cotton futures, where the parties intended to settle differences on the basis of the market value of the cotton on a given day, was prohibited by the section of the code now under consideration.    In *Watson* v. *Adams*, 103 *Ga.* 733, 736, it was held that there could be no valid sale of a legacy the vesting of which was dependent upon a bare contingency, for the reason that such a sale was rendered inoperative by the provisions of section 3537 of the Civil Code, and that no title would pass to the purchaser.    A levy of an attachment issued against the legatee was consequently held to be void.    In the light of the suggestion made by Mr. Tiedeman, which is referred to above, that all contracts for future delivery of goods are subject to serious question wherever the common-law offense of regrating is still punishable by indictment, it may be proper to state that while the common-law offense of regrating is an indictable offense in this State (Penal Code, § 662), the article which was the subject of the contract to sell in the present case does not come within the class mentioned in the common-law definition of the offense of regrating. The Penal Code does not attempt to define the offense of regrating.    It simply declares that one who shall commit the offense known to the common law as regrating may be prosecuted and punished.    Mr. Bishop says, " It is not easy to see how simple regrating, as defined by Blackstone, and distinguished from forestalling and engrossing, can be a common-law offence in this country." 1 Bish. New Cr. Law, § 528.    While the offenses of forestalling, regrating, and engrossing were abolished in this State by the Penal

Code of 1833, they were revived by the act of December 5, 1863. See Acts 1863-4, p. 46; Cobb's Digest, 821, sec. 249.

2. The contract under consideration in this case is upon its face a valid contract. While it may be said that it is apparent from the terms of the contract that it was not the intention of the parties to sell any specific article, but that it was an executory agreement for the sale of an article which was to come into existence after the contract was entered into, still it is apparent that it was the intention of the parties that there should be an actual delivery of the article when it came into existence, and no language could have been used which would have made this intention more manifest than that provision in the contract which imposed upon the seller a penalty for every pound of cotton which he failed to deliver, according to the terms of the contract. The contract is valid upon its face, and, when construed in the light of the circumstances surrounding the parties at the time it was executed, it is apparent that the parties contemplated an actual delivery of the property, and in no sense was it a mere speculation upon chances. While the contract did not call for any particular cotton, or cotton raised upon any particular place, the occupation of the seller, that of a cotton-planter, was a circumstance which could be looked to, even if there was doubt about the intention of the parties, to determine whether an actual delivery of cotton was contemplated, or whether on the day fixed for delivery the two parties were to settle with each other their differences on the basis of the market value of the article on that day.

3. When a contract is valid upon its face, or, taken in the light of the circumstances surrounding the parties at the time it was entered into, it appears to be valid, it is incumbent upon him who attacks the contract to show its invalidity; and therefore in the present case the burden rested upon the defendant to show that the agreement entered into between it and the plaintiff, although apparently valid, was merely colorable, that there was no intention on the part of the parties that actual cotton was to be delivered, that the transaction was a mere speculation upon chances, and that both intended that on the day fixed for the delivery the differences between the parties should be adjusted by the payment of a sum of money by one to the other, as the case might be, according to the market value of the cotton on that day. See Conner v. Robertson, supra; 2 Beach Mod. Law Con. § 1468.

4. It is clear from the evidence in this case that it was the intention of the parties that there should be an actual delivery of cotton, and it is to be inferred from the testimony that at the time the contract was entered into both parties to the contract expected that Castlen would comply with his contract by the delivery of cotton raised on his lands.   This was not, however, made a stipulation in the contract, and the fact that for some reason Castlen was unable to comply with his contract with cotton procured from this source would not prevent him from purchasing in the market cotton sufficient to comply with his contract.   The contract was valid at the time it was entered into, and the fact that the seller could not comply with the same in the manner in which he intended to comply, when that mode of compliance was not made a part of the contract itself, will not prevent him from complying with his contract in such other way as may be open to him at the time he is bound to perform.   See Conner *v.* Robertson, supra.

5. It was contended by the defendant that the contract was a mere speculation upon chances, and void.   Whether it was such depended upon the intention of the parties at the time the contract was made; and the circumstances surrounding them at the time would shed much light on this question.   There was, therefore, no error in admitting testimony to show that Castlen was a cotton-planter and had cotton actually planted and growing at the time he entered into the contract.

6, 7.   The Civil Code declares that parol evidence is inadmissible to add to, take from, or vary a written contract, or to contradict or vary the terms of a valid written instrument.   Civil Code, §§ 3675, 5201.   When parties have reduced the agreement between them to writing, they must abide by the terms of the writing, whatever they may be, and nothing in the writing can be contradicted or varied by parol evidence.   If, however, "a part of a contract only is reduced to writing (such as a note given in pursuance of a contract), and it is manifest that the writing was not intended to speak the whole contract, then parol evidence is admissible." Civil Code, § 3675 (1).   "To bring a case within the rule admitting parol evidence to complete an entire agreement of which a writing is only a part, two things are essential.   First, the writing must appear on inspection to be an incomplete contract; and second, the parol evidence must be consistent with and not contradictory of the

written instrument." Bradner, Evidence (2d ed.), 303. See also Underhill, Ev. § 209, 307; Smith, Ev. 214. And a party is at liberty to prove "the existence of any separate oral agreement as to any matter on which a document is silent, and which is not inconsistent with its terms, if from the circumstances of the case the court infers that the parties did not intend the document to be a complete and final statement of the whole of the transactions between them." 2 Whart. Ev. § 1026, p. 203. See also Smith, Ev. 553; 1 Gr. Ev. (16th ed.) § 284a, p. 413; Browne, Parol Ev. § 50; McKelvey, Ev. § 277. It appears from the authorities above cited, that, in order to render parol evidence admissible for the purpose of making complete an incomplete contract, the fact that the contract is incomplete must appear upon the face of the contract by reason of a patent ambiguity, or, although apparently complete on its face, in the light of evidence showing the circumstances surrounding the parties at the time the contract was executed, a latent ambiguity is made to appear. The code recognizes this rule and allows proof of attendant and surrounding circumstances in order to relieve a patent ambiguity, and in order to raise a latent ambiguity that it may in like manner be relieved. Civil Code, §§ 3675, 5202. The rule is thus stated in *McMahan* v. *Tyson*, 23 *Ga.* 43: "When a writing is such that something more than what is expressed by it is to be implied from it, parol evidence of anything not inconsistent with that unexpressed something is admissible." In that case it appeared that a note was given in consideration of "rent," and parol evidence was admitted to show what was the subject-matter of the contract of rent. In *Johnston* v. *Patterson*, 86 *Ga.* 725, the ruling in *McMahan* v. *Tyson* was followed, and it was held that a written contract, silent or ambiguous as to certain matters, may, as to them, be explained by parol evidence not conflicting with anything plainly expressed in such contract. In *Barclay* v. *Hopkins*, 59 *Ga.* 562, it was held: "Where the entire contract does not purport to be in writing, parol testimony is admissible to show all other terms and conditions, not inconsistent with the written part." There are many decisions by this court relating to this subject, but it would be useless to refer to or cite all of them. Enough have been cited to show that this court has recognized the rule, that in order to allow parol evidence to be admitted to show a collateral agreement it must appear, either from the contract itself

or from the surrounding circumstances, that the contract is incomplete, and what is sought to be shown as a collateral agreement must not in any way conflict with or contradict what is contained in the writing. An examination of the cases decided by this court will show, we think, that this rule has been steadfastly adhered to. There may be some confusion in regard to the way in which it has been applied in some cases, and possibly there have been erroneous applications of the rule; but no case has been called to our attention where there has been any departure from this rule.

It follows from what is above said, that the court did not err in refusing to allow the defendant to prove, as a collateral agreement between himself and the plaintiff, that the cotton specified in the contract was to be raised on the lands of the plaintiff. The contract between the parties evidenced by the writing calls for a certain number of bales of cotton of a certain description, and for no particular cotton. It is clear that, so far as the terms of the contract are concerned, the parties did not intend that the plaintiff should be limited to cotton raised by him. It was a plain and unambiguous contract for the delivery of any cotton, answering to the description specified in the contract, which the plaintiff might see fit to offer to the defendant at the times specified in the contract. Such being the legal effect of the paper, parol evidence tending to show that the real contract was that the cotton was to be raised on the land of the plaintiff contradicted and varied and altered the very terms of the written instrument. There being no patent ambiguity in the contract, of course parol evidence was not admissible on the ground that such an ambiguity might be explained. Evidence showing that it was the intention of the parties to make a contract whereby plaintiff should be confined to cotton raised on his own lands did not raise a latent ambiguity, but directly impeached an unambiguous instrument. If such evidence could be held to raise a latent ambiguity, then the rule prohibiting the introduction of parol evidence would be, in effect, abrogated. If such was the intention of the parties, and this was omitted from the contract by fraud, accident, or mistake, of course the defendant would have a right in a court of equity to reform the contract, but he can not in a court of law be allowed in this manner to contradict the terms of a plain, unambiguous paper by parol evidence. Many cases were cited by counsel for plaintiff in error from the courts of this country and of England, but

what is said in regard to the decisions of our own court will apply generally to these cases, and that is, that the rule above referred to has been recognized in perhaps all of them, but there has been some confusion in its application to the facts of the particular case. Of the many cases cited we will allude to only one, a case decided by the Queen's Bench Division of the Supreme Court of Judicature of England. It was held by two judges, Bramwell, L. J., dissenting, that on the sale of goods by a manufacturer of such goods, who is not otherwise a dealer in them, there is, in the absence of any usage in the particular trade or as regards the particular goods to supply goods of other makers, an implied contract that the goods shall be those of the manufacturer's own make; and that parol evidence is admissible to show such usage. Even if that be sound law, it would not be applicable in any case unless there was something peculiar about the article manufactured. Whether under the rule parol evidence would be admissible even in this case is not free from doubt. But where the article sold is a common article of merchandise or a common product of the country, the rule laid down in that case would certainly not be applicable. The language of Bramwell, L. J., in his dissenting opinion, seems to us to be a recognition of the correct rule and a true application of it to the facts of the case then under consideration. He says: "To hold that it was a part of the bargain that they should be of the vendor's make is to insert a term in the contract that the parties might have put in for themselves, and this ought never to be done without some most cogent consideration. . . I hold, therefore, that where goods are bought which are as good when of one man's make as of another's, there is no agreement by the seller, though a maker, that the goods shall be of his make. And that this is true whether the article is already made or is to be made." Johnson v. Raylton, 7 Q. B. D., L. R. 438, 448.

8. There was no error in overruling the defendant's demurrer, nor in the rulings on evidence complained of in the motion for a new trial. The evidence authorized the verdict; and nothing appears in the record which authorizes a reversal of the judgment refusing a new trial. *Judgment affirmed. All the Justices concurring.*