## 2636. LUKE *v.* LIVINGSTON.

1. In writings relating to the sale of property in process of growth or manufacture, to be delivered at a future date, the word "sell" will be construed as meaning "offers to sell," or "agrees to sell," and a writing in this form of contract which states that the one party sells to the other such a commodity for future delivery will be construed as an option or as an offer, unless it affirmatively appears that it has been accepted. As to personal property, the acceptance may be shown by proof that the person to whom the offer is made has paid a portion of the purchase price.

2. Where a contract is subject to two constructions, one of which would make it lawful and the other unlawful, the court will, on demurrer, and until the circumstances under which the contract was made appear in proof, give the contract that construction which would make it lawful. Parol evidence is competent to show that a written contract apparently relating to an actual sale of cotton was in fact entered into merely for the purpose of allowing the parties to deal in cotton futures.

DECIDED MARCH 3, 1911.

Complaint; from city court of Ocilla—Judge Oxford. April 1, 1910.

*Haygood & Cutts,* for plaintiff in error.

*O. H. Elkins, J. B. Wall, H. J. Quincey, Cobb & Erwin,* contra.

RUSSELL, J. 1. Livingston sued Luke upon the following contract:

"Georgia, Irwin County. This contract or agreement made and entered into this the 5th day of June, 1909, between J. K. Livingston, party of the first part, and J. C. Luke, of Irwin county, Ga., party of the second part, witnesseth: That the said party of the second part has and does by these presents sell to the said J. K. Livingston or his successors or assigns 100 bales of cotton, to be delivered f. o. b., Ocilla, Ga., on or before September and October the 15th day of November, 1909, at and for the price of September and October $10\frac{5}{16}$ cents per pound and November $10\frac{1}{4}$ cents per pound, basis good middling, said cotton to be merchantable and in bales to average 500 pounds. The sum of one dollar in cash has been paid on this contract by the said J. K. Livingston to the party of the second part in part consideration, the receipt whereof is hereby acknowledged by the said party of the second part. The above number of bales represents the crop, or a part of the crop, of the party of the second part for the present year, and this contract is for actual cotton. Now should either party to this contract fail or refuse to carry out his or their part of same on the day speci-

fied, time being of the essence of the contract, it is understood and agreed that the party of the second part, upon making tender of said cotton, and the refusal of the said J. K. Livingston to accept same and settle at the price above contracted for, shall be entitled to liquidated damages in an amount equal to the difference between the price herein contracted for and the actual value of the same grade of cotton in Ocilla on the day of such tender of cotton, and, should the party of the second part fail and refuse to deliver said cotton on the day mentioned above for its delivery, it is understood and agreed that the said J. K. Livingston shall be entitled to liquidated damages in an amount equal to the difference between the actual value of the same grade of cotton in Ocilla on the date of delivery agreed upon in this contract and the price herein contracted for.  It is expressly understood and agreed that each of the parties to this contract waive and renounce any and all rights they may have under and by virtue of the homestead or exemption laws, either State or Federal, as against the fulfillment of this contract or the liquidated damages agreed on under same.  Witness the hands and seals of each party in duplicate, the day and year first above written.

"[Signed]                   .    J. K. Livingston.   [L. S.]
                                    "H. H. James.
"[Signed]                        J. C. Luke.          [L. S.]
   "Extended to 25th day of November, 1909, by consent of each party."

   The defendant demurred to the petition upon the ground that the contract was unilateral, and also on the ground that it was a wagering contract and not enforceable, for the reason that as the contract sets forth no obligation on the part of the plaintiff to buy the cotton, and is without mutuality as to any executory sale of cotton, and that as the only feature of the contract as to which there is any mutuality is that portion which provides for the payment of the difference between the contract price and the market price at the time fixed in the contract, and therefore it does not call for the actual delivery of any cotton, but calls merely for adjustment in money of the differences in the prices of cotton, it appears on its face to be a gaming or speculative contract, a "dealing in cotton futures."  In response to another demurrer, addressed to a different point, the plaintiff amended his declaration, and

thereafter the judge overruled the demurrers. It is not necessary to deal with the demurrer to which we last refer (which related to the extension of time), because we shall dispose of the case regardless of that feature.

In a contract relating to the sale of property not then in existence, in the state in which it is to be delivered (as where crops are to be grown or goods are to be manufactured before the delivery can be made), the word "sell" will be construed to mean "offer to sell," and the contract will be held to be unilateral, unless it is shown affirmatively that the proposed buyer has accepted the terms of the contract. To illustrate: in this case, where the written contract says that "the party of the second part has and does by these presents sell to the said J. K. Livingston" certain cotton, and it appears that the contract was made in June, at a time when the cotton was a growing crop, and that the delivery was to be made in October, when that crop would be ready for marketing, the word "sell" must be construed as being equivalent to "offers to sell." It is necessary, therefore, that the contract should show also that Livingston agreed to buy.

The acceptance of this offer to sell could be shown in a number of ways; for instance, by Livingston's signing an agreement expressly offering to buy, or by his tendering or paying the purchase price on or before the time when the offer expired or was legally withdrawn. See *Sivell* v. *Hogan,* 119 *Ga.* 167 (46 S. E. 67). But, though the contract relates to the sale of personal property of more than $50 in value, acceptance may be shown in another manner; that is, that Livingston paid to Luke some portion of the purchase price of the cotton in order to bind the bargain. There is in the written contract the recital that "the sum of one dollar in cash has been paid on this contract by the said J. K. Livingston to the party of the second part in part consideration, the receipt whereof is hereby acknowledged by the said party of the second part." It is insisted that this recital shows that Livingston paid $1 of the purchase price of the cotton, thus signifying his acceptance and taking the transaction out of the statute of frauds. At first we were of the opinion that this was a mere recital of a consideration for Luke's offer to sell (and the fact that an offer is based on a consideration does not prevent its being unilateral), but on more mature reflection we have come to the view that the

statement that $1 has been paid is at least prima facie a recital
of part payment of the purchase price. It will, of course, be
permissible for the defendant to show at the trial that this dol-
lar was in fact never paid; and, if it was not actually paid,
the statute of frauds has not been satisfied, and Luke's contract,
considered as an offer, has not been legally accepted. In that
event, unless there is something more in the case than now appears,
the verdict should be for the defendant  We are not unmindful
that later on in the contract Livingston binds himself to pay certain
damages if he does not accept when delivery is offered to him, but,
without first having bound himself to accept delivery, this second
clause would be unenforceable, as being a mere contract of specu-
lation in futures.

2.   The plaintiff in error contends that the contract as a whole
shows on its face that it was a gaming contract. a mere attempt to
speculate in cotton futures.  We confess that there is much on the
face of the contract to support this inference, but we do not think
that the unlawful purpose is so clearly disclosed as to warrant this
court in so holding wholly as a matter of law on demurrer.   The
contract, as we construe it (taking the fact of payment of part of
the purchase price by Livingston as equivalent to an express ac-
ceptance of Luke's offer to sell and deliver). on the whole amounts
to an agreement which, prima facie, contemplates actual delivery
of the cotton, but in the next breath provides that if delivery is not
made, certain liquidated damages shall ensue, and these damages
are to be measured according to the usual basis upon which cotton-
future contracts (gaming contracts) are to be settled.   And it is
to be noted that neither party could have a legal action against
the other, in the event of a breach of the contract, except upon
this basis, which, as has been said, is the usual basis contemplated
for a settlement in these illegal transactions of which we have been
speaking.   Hence, it is apparent that the contract on its very face
strongly indicates a purpose inconsistent with the first purpose
expressed in the contract (that is, a sale and delivery of actual
cotton), and we may say, in passing, that this inference is
so strongly indicated that, with but very little evidence to corrobo-
rate it, a jury would be authorized to find an illegal intent from
what appears on the face of the contract itself.   On demurrer this
court and the lower court must give the benefit of the doubt in favor

of the legality of the contract. The contemplation of the parties in transactions of this nature is rarely to be determined solely by what the parties themselves say in the contract itself. People are not usually so bold in unlawful transactions as to state their unlawful intentions in writing. On the contrary, they usually attempt to conceal unlawful intentions through the use of words. They frequently mask their unlawful intentions in the phraseology of a legal contract. For these reasons, parol evidence is permissible to show the actual intention of the parties in making the contract. It is true, as held in *Forsyth Manufacturing Co.* v. *Castlen,* 112 *Ga.* 199 (37 S. E. 485, 81 Am. St. R. 28), an unlawful intent must be present in the minds of both parties; but the intent can be shown by circumstances. It will be for the jury to say, when they have heard all the circumstances, what was the spirit which moved the making of this contract. Did the parties when they made it really understand, contemplate, and believe that actual cotton would be brought by one person, and not merely tendered, but actually delivered to the other, irrespective of whether the market was above or below the price fixed in the contract? Or did they have in mind that if the price named in the contract happened to be the market price, the cotton might be delivered, while, if the market price were different, the parties would probably not go through the form of delivering the cotton, but would settle their differences in money, without any transfer of the cotton taking place? If the seller is a farmer raising cotton, and the buyer is one who has use for cotton, such as a spinner or an exporter, the inference that the actual delivery of the cotton was contemplated would be much more readily indulged than it would be if the parties occupied no such relationship. So, too, if a farmer should sell, on one of these prospective contracts, to a person informed of the extent of his farming operations, a much greater amount of cotton than he was likely to raise upon his farm, the inference of speculation could be very readily indulged. This enumeration of circumstances is not intended to be exhaustive, but is merely illustrative.

Considering the contract as a whole, we are finally led to conclude that jury questions are presented, and that the court did not err in overruling the general demurrer to the petition.

*Judgment affirmed.*