### 3917. LIVINGSTON *v.* MARTIN.

Under the ruling in *Luke* v. *Livingston,* 9 *Ga. App.* 116 (70 S. E. 596), the
court did not err in refusing to enter judgment in favor of the plaintiff
and against the defendant in this case. The expressed intention of the
defendant's agreement was to let the ruling of this court "on the uni-
lateral feature of said case, if adverse to Luke, finally determine" the
case at bar. The ruling of this court in that case was not necessarily or
conclusively adverse to Luke, nor did it affect his right to show either
that the contract was in fact unilateral, or that it was void because it
was in fact a wagering contract. In affirming the judgment overruling
the demurrer, our judgment was expressly placed upon the ground that
jury questions were involved, and that the lower court could not, on

demurrer, determine, as a matter of law, that the contract was unilateral, or that it was void as a gaming contract.

DECIDED MARCH 6, 1912.

Complaint: from city court of Fitzgerald—Judge Wall. December 4, 1911.

*Elkins & Wall*, for plaintiff.

*Griffin & Griffin, A. J. McDonald, D. E. Griffin*, for defendant.

RUSSELL, J. Livingston brought this suit against Martin upon a contract apparently substantially similar to that involved in *Luke* v. *Livingston*, 9 *Ga. App.* 116 (70 S. E. 596), seeking to recover damages in the sum of $1,275, for a breach of the contract. At the May term, 1910, of the city court of Fitzgerald (about the time that the writ of error from the city court of Ocilla in *Luke* v. *Livingston* was filed in this court) the defendant, Martin, individually and by his counsel entered into an agreement, which was entered on the minutes of the court, of which the following are the only material portions: "Whereas the contract sued on in said *Luke* case is substantially the same in form as the one sued on in the above-stated case, it is accordingly agreed by the said defendant and his counsel that if the said Court of Appeals decides that the contract in said *Luke* case is not unilateral, and is, on account of the terms of said contract, not unenforceable, then the plaintiff in the above-stated case may at once enter judgment before the judge of this court (a jury trial being expressly waived) against the defendant for the amount sued for, except $50. In the event that the Court of Appeals decides that said contract in said *Luke* case is not unilateral, and is not void on account of the terms of said contract, all right to further objections, grounds of demurrer, pleas, answers, and the like, both those in record and those not in record, are expressly waived, and the recitals of facts admitted as to the above-stated amount, the intention being to let the Court of Appeals ruling on the unilateral feature of said case, if adverse to Luke, finally determine the above-stated case." Upon the strength of this agreement counsel for Livingston, during the November term, 1911, of the city court of Fitzgerald, presented to the court a motion asking the rendition of a judgment in his favor against the said Martin, without the intervention of a jury, the motion stating that the plaintiff in the pending cause, under provisions of the consent made and filed by the parties in the case, and by reason of the terms of

the decision of the Court of Appeals in the case of *Luke* v. *Livingston,* was entitled to have judgment rendered in his favor. The judge issued a rule calling upon the defendant to show cause why the judgment should not be entered against him, and, upon a hearing thereon, overruled the motion and refused to enter judgment in behalf of the plaintiff. Livingston excepts to this judgment.

We think the court ruled correctly in denying the plaintiff's right to take a judgment. It is extremely questionable whether Martin's agreement, which we have quoted literally, is of any binding force. While every agreement between parties in court should be punctiliously observed and rigidly enforced by the courts, when it is possible to enforce it, it is difficult to discern how Martin's agreement escapes being a nudum pactum, if it escapes at all. As introductory of the material portions of the agreement which we have quoted, it is stated that it is agreed in open court *"by the defendant and his counsel"* that the instant case be not tried until the Court of Appeals decides the case of Livingston *v.* Luke, a writ of error from the city court of Ocilla; and (giving other terms of the agreement the construction now claimed by counsel for the plaintiff in error) it was agreed by the defendant that this case should abide the result of the *Luke* case. So much for the defendant's agreement. But what does the plaintiff upon his part agree to do as a consideration for the defendant's promise? There seems to be nothing, unless it is an implied agreement that the case will be delayed, and thus the defendant may gain some time. The plaintiff does not sign the agreement upon the minutes, nor is there any stipulation upon the part of the plaintiff that if the judgment of the lower court had been reversed, and this court had held that the contract upon its face was, as a matter of law, unilateral and void, he would dismiss the action and pay the costs. However, as stated above, the agreement was entered into in open court, and perhaps the implied assent of the plaintiff's counsel to the stipulation in regard to continuances might constitute such an acceptance on the plaintiff's part as would have bound him to dismiss the suit if the contract in Luke's case had been declared unilateral upon its face; so we will waive this point and deal with the agreement as though it was binding upon the defendant, Martin.

Even in this view of the matter, however, the decision of the

trial judge was right, because it is expressly stated that the intention of the defendant's agreement is "to let the Court of Appeals' ruling on the unilateral feature of said case, if adverse to Luke, finally determine the above-stated case." It is true that in the preceding portion of the agreement it is stated that "if the Court of Appeals decides that the contract in said *Luke* case is not unilateral, and is, on account of the terms of said contract, not unenforceable, then the plaintiff [in this case] may at once enter judgment before the judge of this court." But this agreement, like every other agreement, must be considered as a whole. Construing the agreement as a whole, the language used in the concluding portion of the agreement, that the ruling on the unilateral feature is to finally determine the case, is controlling; and this means nothing more than that the question is to be decided by a jury, if the defendant, under proper pleadings, has evidence to show that the dollar mentioned in the contract was not in fact paid to him. The reason why the agreement of the defendant in this case is not binding, and was properly held not to be so by the trial judge, is that, while this court did not hold the contract in the *Luke* case to be unilateral or unenforceable per se, we did not hold that it was not unilateral, and, on the contrary, expressly held that on a trial it might be shown to be both unilateral and void, as contrary to public policy. According to the holding in the *Luke* case, supra, the contract is prima facie not unilateral, because of the alleged payment of the sum of one dollar upon the purchase-price; and so we held that the judge could not, upon demurrer (which considers only the outward appearance of the instrument), say that it was unilateral; but this court did not hold that the contract was not unilateral, and, on the contrary, it was made the duty of the judge to declare the contract unilateral and void if it should appear to the jury, upon the trial, that the dollar mentioned in the contract was in fact never paid; for in that event Luke's contract, considered as an offer to sell, would not have been legally accepted. We expressly held that Livingston's agreement to pay damages in case he did not accept would not prevent the contract from being unilateral, and we put our judgment sustaining the overruling of the demurrer to the petition upon the fact that the statement that a dollar had been paid was, "at least prima facie, a recital of part payment of the *purchase-price.*" We kept in mind that the mere fact

49

that an offer is based on a consideration does not prevent its being unilateral, but we concluded, upon mature consideration, that the trial judge, in passing upon the contract on demurrer, did not err in treating the statement of the contract, that "the sum of one dollar in cash has been paid on this contract by the said J. K. Livingston," as prima facie evidence of acceptance on Livingston's part; that is, as prima facie evidence that Livingston had paid to Luke a portion of the purchase-price of the cotton in order to bind the bargain.

The trial judge, in ruling upon the motion to enter up judgment against the defendant in this case, correctly apprehended the ruling of this court in the *Luke* case, as well as the import of the agreement made by the defendant in this case. The agreement and the ruling of this court are not defined within the same boundaries, nor do they cover identically the same territory. If the agreement in regard to the pending cause is mutual, it evidences that both parties expected this court, in the *Luke* case, to pass finally and conclusively upon the plaintiff's (Luke's) right of action, and to adjudge that upon the contract alone he was either entitled or not entitled to recover. Perhaps it was Luke's purpose, in filing the demurrer, to thus test the sufficiency of the contract. The demurrer may have been Luke's only means of defense. Luke may have been unable to deny Livingston's acceptance of the contract by the payment of a part of the purchase-price, or to have shown that it was mutually understood and agreed that the contract was a mere cover for a transaction in cotton futures. The ruling sustaining the judgment of the city court of Ocilla in Luke's case might, for these reasons, be conclusive in his case. This court, however, without any knowledge of or concern with the real facts of the eventual conclusion of the litigation, took the view that the trial judge was right in holding that, under the allegations of the contract, the plaintiff had a prima facie right to recover, even though it could not be said that the right was absolutely beyond explanation. On the contrary, we expressly held that the plaintiff's entire right to recover would be destroyed if it appeared either that the contract was unilateral because there had in fact been no payment made upon the contract, or because the agreement, while valid on its face, was a mere mask designed to cover an unlawful transaction in cotton futures.

The assumption of the parties in this case, as evidenced by the agreement, was that the decision of this court upon the demurrer would finally dispose of the case. On the contrary, we concluded our ruling upon the contract in the *Luke* case, supra, by saying: "Considering the contract as a whole, we are finally led to conclude that jury questions are presented, and [for that reason] that the court did not err in overruling the general demurrer to the petition." Construing fairly the agreement of the defendant in this case as a whole, it amounts only to an agreement to abide the result in the *Luke* case; and this means, as rightly held by the trial judge, that either of the defenses pointed out in the *Luke* case is available to the defendant in the present case.

*Judgment affirmed.*