## 4661. RUSSELL *et al.* v. TURNER.

1. A contract apparently legal on its face will be presumed to be legal; and where one of the parties to it sets up that it is illegal, and therefore not binding upon him, the onus is upon him to show that it is illegal.
2. A party to a contract for the sale of cotton for future delivery who sets up that the contract is illegal and not binding, for the reason that it was intended that the cotton should not be delivered, must, in order to relieve himself of the obligation of the contract, show that such was the intention of both parties.
3. Where a contract for the sale of cotton for future delivery is apparently

legal on its face, and the buyer transfers his rights under the contract to a third person, who takes the assignment for value, before the date for delivery of the cotton and without notice of illegality in the contract, the seller may, by acts in regard to the transfer and to the rights of the transferee, estop himself from setting up that it was a contract for cotton futures.

4. Where a seller of cotton for future delivery himself prepares the contract, and the contract is sold and transferred to another, and the original seller knows of the transfer and gives to the transferee his note for liquidated damages named in the contract, and says nothing as to invalidity of the contract, and thereupon the transferee cancels a debt due him by the original purchaser, and, when the note becomes due, the maker of it seeks a renewal, and the time of payment is extended on condition that he shall give security, and he still remains silent and gives no notice of any illegality in the contract, and the transferee extends the time and accepts the new note and security in good faith and without notice, and the maker allows the note thus secured to run to maturity, and no defense to the contract is disclosed by him until the note is in the hands of an attorney for collection, he will be held to be estopped from setting up the defense that the contract is illegal.

5. Where, a contract for the sale of cotton, apparently legal on its face, has been transferred to an innocent transferee, without notice and for value, before the time for delivery of the cotton, and the seller under the contract gives a note for liquidated damages agreed on in the contract, without disclosing anything to the transferee as to his claim that the contract was illegal, and the transferee pays the buyer under the contract the price agreed upon, and the maker of the note, when it falls due, without disclosing his claim as to the invalidity of the contract, seeks to obtain an extension of time, and the transferee agrees to extend the time upon condition that the maker shall give security, and a new note with security is given upon the terms sought and granted, this will be a novation of the contract; and a defense to a suit on the new note, on the ground that the original contract was tainted with the illegal design between the original parties, of dealing in cotton futures, would not avail.

DECIDED JANUARY 27, 1914. CHIEF JUDGE RUSSELL BEING DISQUALIFIED, JUDGE ELLIS, OF THE ATLANTA CIRCUIT, WAS DESIGNATED TO SIT IN HIS STEAD.

Complaint; from city court of Jefferson—Judge Stone. December 28, 1912.

Turner sued L. C. Russell, as maker, and W. H. Toole, as security, on a promissory note payable to the plaintiff. The defendants pleaded that the note was void because given in settlement of a contract between Lyle & Company and Russell for the sale of cotton futures. It was contended that, the contract being illegal, without consideration, and of no binding force, the note sued on was tainted with the vice that rendered the original contract void,

and was uncollectible, even if the holder took it for value and without notice, and before maturity. The plaintiff contended that the contract was not illegal; that Lyle & Company intended to buy actual cotton; that Russell, to avoid the contract, must show not only that it was his intention not to deliver the actual cotton, but that such was also the intention of Lyle & Company. He contended also that even if the contract was illegal, Russell, by his acts in respect to the transaction, was estopped from pleading its illegality, so far as the plaintiff was concerned. And he contended further that there was a novation of the contract which entitled him to collect the note, even if the contract between Russell and Lyle & Company was illegal. The verdict was for the plaintiff; and the defendants except to the refusal to grant a new trial.

*Little & Powell, T. J. Shackelford, P. Cooley,* for plaintiffs in error.

*H. C. Tuck, J. S. Ayers, Cobb & Erwin,* contra.

Ellis, J. (After stating the foregoing facts.) The contract set out in this case is for the sale of a specified number of bales of a certain grade of cotton, at Winder, Georgia, to be delivered "on the 1st to the 25th day of November, 1909," at a fixed price. The contract recites a mutual obligation to sell and to buy, and a consideration of one dollar paid. If the contract stopped here, there could be no suspicion aroused by its perusal. If the seller failed to deliver, the buyer would have a cause of action against him, and the measure of his damages would be the difference between the market value of the cotton at the time of the breach of the contract and the price named in the contract. If the seller tendered the cotton and the buyer failed or refused to take it, the seller would have the right to sell the cotton in the open market,—that is, sell it for its market value,—and sue for and recover the difference, if any, between the agreed price and the proceeds of the sale. The contract, however, provides for the contingency of failure to deliver or to accept, and, instead of leaving the result of a breach of the contract to be settled as above stated, it is agreed that time is of the essence of the contract, and that, if the seller fails to deliver or the buyer fails to accept, then the damages shall be liquidated; and the amount of damages is fixed at the difference between the contract price and the market value at Winder of the grade of cotton named in the contract. Upon the face of the contract there appears

nothing illegal. It appears to be a perfectly fair contract, and the method of adjustment proposed in case of a breach is not substantially different from what the law would have provided. The contract is almost identical with that under review in the case of *Luke* v. *Livingston,* 9 *Ga. App.* 116 (70 S. E. 596), but in that contract there was a little earmark not in this, which might have induced the criticism of Judge Russell in that case. In this contract the time of delivery is fixed "on the 1st to the 25th day of November, 1909." In the other contract, the time of delivery is fixed "on or before September and October the 15th day of November, 1909." The price in this contract is fixed at 11⅛ cents per pound, and in the other at $10\frac{5}{16}$ cents any time in September or October, and 10¼ in November. These features of the contract in the *Luke* case, supra, at least might raise a suspicion that no actual delivery was contemplated. The contract in this case is just such a one as honest men dealing in actual cotton, who desire to avoid controversy, might make; and it is just such a contract as shrewd people not expecting or intending actual delivery of the cotton would make in order to conceal their real purpose and at the same time escape that condemnation which the law imposes upon transactions entered into for speculating in cotton futures, sometimes denominated gaming contracts. Therefore, the intention of the parties is a matter for a jury, and in the trial below the judge properly submitted that question to the jury.

If the contract was valid upon its face, it was incumbent upon Mr. Russell to show that it was the intention of both parties—of himself and Lyle & Company that no actual cotton was to be delivered. In the case of *Forsyth Manufacturing Co.* v. *Castlen,* 112 *Ga.* 199 (37 S. E. 485, 81 Am. St. R. 28), it is held: "When a contract is valid upon its face, or, when taken in the light of the circumstances surrounding the parties at the time it was entered into, appears to be valid, it is incumbent on him who attacks the contract to show its invalidity." Did the defendant Russell carry this burden? He testified in substance that he did not expect or intend to deliver the cotton, that it was his intention to settle on differences. He did not specifically say that Lyle & Company had the same intention, but he did say that Lyle knew he had other contracts of the same nature, and that it was the intention to settle on differences. Lyle's testimony was to the effect that his under-

standing and intention were to the effect that the cotton was to actually be delivered, but that Russell had the right, under the contract, not to deliver, but to settle on differences. There was enough evidence on this question to require it to be submitted to the jury, and it was submitted, and the jury seems to have found against Russell's contention, unless perhaps they placed their verdict on one of the charges complained of.

If the contract between Russell and Lyle & Company was for cotton futures, that is to say, a speculation in chances, and no actual cotton was to be delivered, then it can not be enforced. Neither Russell nor Lyle & Company, under such circumstances, could have enforced it; and if there was nothing more than a transfer of the right of Lyle & Company under it to Turner, if it was illegal he could not enforce it. A gaming contract transferred to an innocent holder for value, before due and without notice, can not be enforced. *Cunningham* v. *National Bank of Augusta*, 71 *Ga.* 400 (51 Am. R. 266). As we have said, if the contract was valid and binding, then Turner, as transferee, could enforce it; and he could collect the note given in lieu of it. But suppose it was a contract for cotton futures, and concede that Lyle & Company could not enforce it, and that Turner, simply as a transferee for value, could not enforce it, then let us see how the case stands under the facts and circumstances under which the evidence shows Turner got the note sued on. Russell and Lyle entered into a contract for the sale and delivery of fifty bales of cotton, as shown by a contract which Russell prepared. Lyle testified: "I owed Mr. Turner when I transferred this contract to him. That contract represents what I owed him. I owed him the amount of that contract; . . and when Mr. Russell gave Turner the note, he (Turner) credited me; he made a settlement with me by accepting the note of Mr. Russell." It is conceded that Russell's contract was turned over to Turner before the time for the delivery of the cotton arrived. It is clear that, where two parties enter into a contract apparently legal on its face, and one of the parties seeks to avoid it upon the ground that it can not be enforced because it was a contract for the sale of cotton futures, he must show that it was the intention of both parties that actual delivery should not be made. In *Forsyth Manufacturing Co.* v. *Castlen,* supra, it is held that "an executory agreement for the sale of goods to be delivered at a future day

is valid, though at the time the seller has not the goods in his possession, has not contracted to purchase them, and has no expectation of acquiring them otherwise than by producing, manufacturing, or purchasing them at some time before the day of delivery." In the same case it is held that "such a transaction is not rendered invalid by the provisions of section 3537 of the Civil Code [of 1895; Civil Code of 1910, § 4117], unless it is made to appear that neither of the parties contemplated an actual delivery of the goods, and that it was the intention of both that there should be no actual delivery but that on the day fixed for delivery there should be a settlement of their differences, based on the market value of the goods on that day. In that event, the transaction would be a pure speculation on chances, but not otherwise." In *Luke* v. *Livingston,* supra, Russell, J., delivering the opinion, said: "For these reasons, parol evidence is permissible to show the actual intention of the parties in making the contract. It is true, as held in the case of *Forsyth Manufacturing Co.* v. *Castlen,* 112 *Ga.* 199, . . an unlawful intent must be present in the minds of both parties, but the intent can be shown by circumstances."

In regard to the question of no consideration: There was an agreement to sell and an agreement to buy. If the contract was illegal,—if it was a contract for cotton futures, a gaming contract, —then it was void, whether there was a consideration for it or no consideration; and we are here considering the consideration solely on the question as to whether or not the contract, if otherwise legal, was supported by a consideration. And we conclude that, if otherwise legal, it will not fail for want of a consideration. In *Nathans* v. *Arkwright,* 66 *Ga.* 179, it was held: "The recital of the payment of one dollar as the consideration of a quit-claim deed is sufficient; that it was not actually paid does not affect the validity of the conveyance; if not paid, it was recoverable." In *Southern Bell Tel. Co.* v. *Harris,* 117 *Ga.* 1001 (44 S. E. 885), it was held: "Where a contract contains a recital of the payment of one dollar as its consideration, the contract is valid though the sum named was not actually paid. It creates an obligation to pay that sum, which can be enforced by the other party."

The plaintiff contended that the defendant Russell was estopped to plead that the contract was a deal in cotton futures; that even if it was in fact such a contract, Russell had done things and kept

silence as to other things, which would render it unjust, inequitable, and illegal to permit him to avoid the payment of the note sued on. The plaintiff testified that he did not deal in cotton futures; and there was no denial of this. It was clearly shown that Lyle & Company were indebted to Turner. It is clear that Russell knew his contract had been transferred to Turner. It is clear that Russell gave his note to Turner in settlement of his failure to deliver the cotton. It is clear that then Turner cancelled the indebtedness of Lyle & Company to him. It is clear that when Russell's note became due, he applied to Turner for an extension. It was undenied that Turner agreed to extend payment of the note if Russell would give security. It was admitted that a new note was given, security furnished, and the time of payment extended as requested. It was admitted by Russell that, during all these transactions, he never made to Turner, or indeed to any one else, any claim or contention that the contract he made with Lyle & Company was illegal or in any way not binding upon him. Indeed, the evidence shows that the first claim of the kind by Russell was when the note sued on was placed in the hands of an attorney for collection. Can a man transact business in this way, keep silent, and afterwards avoid a contract he had made, apparently valid on its face, and held by an innocent holder for value, who took it before due and without any notice, and under such circumstances as surrounded Turner in this case? We think not.

In the case of *Edenfield* v. *Canady,* 60 *Ga.* 456, it was held: "That, on the part of the two debtors, the motive to the substitution was a gaming contract between themselves, which contract was illegal and void, will not hinder the substitution from being effective by way of estoppel, if the creditor discharged his original debtor and accepted the substitute without any notice that the transaction involved the execution or settlement of a gaming contract." In that case Judge Bleckley said: "That one set of parties had between them a gaming contract, which was illegal and void, will not hinder the substitution from being effective by way of estoppel, if the legal creditor discharged his own legal debtor and accepted the substitute without notice that the transaction involved the execution or settlement of a gaming contract." In *Angier* v. *Smith,* 101 *Ga.* 844 (28 S. E. 167), it was held that "the defense of usury is good, even against a bona fide holder for value

of a negotiable promissory note, who acquired title to the same before its maturity." But in *Walker* v. *Hillyer,* 124 *Ga.* 857 (53 S. E. 313), it was held that "the maker of a note tainted with usury, who, after its maturity, induces another to purchase it, representing that there is a stated amount due, and promising to pay that sum at a later date, is, when it appears that the purchaser acted in good faith, and there is no evidence showing that he knew of the usury, estopped from pleading that there was usury in the original transaction."

Was there a novation of the contract? Section 4226 of the Civil Code of 1910 is as follows: "One simple contract as to the same matter, and on no new consideration, does not destroy another between the same parties; but if new parties are introduced by novation, so as to change the person to whom the obligation is due, the original contract is at an end." In this case the obligation of the plaintiff in error originally was to Lyle & Company, while the note sued on is payable to N. S. Turner, to whom the evidence shows the original contract of the plaintiff in error was transferred. In *Windham* v. *Doles,* 59 *Ga.* 265, it was held: "The purchaser of lands, who gave his notes therefor in 1870, and renewed them from time to time after they got into the hands of a bearer, who bought before due and for value, and gave said bearer, in 1873, new security and indorsement thereon for the balance due, with time extended for payment, can not set up the partial failure of consideration in the original trade, against the payment of the notes so renewed, although the bearer may have heard of the partial failure of consideration. The renewal for the consideration of additional time, and the new parties to the renewed contract, make a novation which estops the defendants from opening the question of the original consideration." In the case of *Dever* v. *Akin,* 40 *Ga.* 423, it was held, that where one was indebted to another for slaves bought of him, and the person to whom the debt was due was indebted to a third person for land, and by mutual agreement of the three parties they wound up the several transactions by the giving of a note by the party who owed the debt for the slaves, to the party to whom the debt for land was due, the amounts of the debts being the same, this transaction was a novation, and the maker of the note could not plead that it was void on the ground that the original indebtedness for slaves was void.

The court held that the original contract for the slaves was at an end, and that the new contract was enforceable, because the consideration of it was the satisfaction of the debt due by the seller of the slaves to the party who had sold the land. In *Gresham* v. *Morrow,* 40 *Ga.* 487, one who held a note of two joint promisors, which had been given for slaves, took a note, in full discharge and satisfaction of it, from one of them and a third party, as his security. "It was held that this was a novation, the original debt ceased to exist, and the consideration of the new note was not slaves, but the satisfaction of the first note." That decision was rendered under the constitutional provision which had declared void any obligation made for the purchase of slaves. In *Cherry* v. *Jones,* 41 *Ga.* 581, it was held that, "if Mrs. Cherry, before she became the guardian of her minor children, purchased negroes in her own right at the executor's sale of her deceased husband's property, and was indebted to the executors therefor, and, after she became the guardian of her children, receipted to them for the payment due by her as so much money received from them due to her wards, and thereby cancelled her own indebtedness to them for the slaves so purchased, and charged herself as guardian with the debt as being due by her to her wards, it was in law a novation, and the original contract between her and the executors, the consideration of which was slaves, was extinguished and at an end, and can not be set up by the defendants in a suit on the guardian's bond as being a debt, the consideration of which was a slave or slaves." In *Washington* v. *Cartwright,* 65 *Ga.* 177, it was held that, where a seller of a horse was indebted to the plaintiff for land, and, by agreement of the parties, the purchaser of the horse gave his note to the plaintiff, who credited his debtor on the land with the amount therefor, the consideration of the note, in the hands of the plaintiff, was not the purchase-money of the horse, so as to render it subject to a judgment thereon, but the extinguishment of the debt for the land was the consideration of the note.

In conclusion, we decide that, even if errors in the charge really existed as set out in the motion for a new trial, they were harmless, because, as we view the case, the verdict was demanded, and there would have been no reversible error if the judge below had directed it.                          *Judgment affirmed.*