*J. W. Overstreet* and *E. K. Overstreet,* contra.

## RAMSEY *v.* PILCHER.

A written contract to "cut all the timber on" a certain tract of land
"which will measure as much as 16 inches in diameter two feet above
the ground, and anything that will square six inches at the top," and
saw it into lumber "as per Savannah specifications," "every stick of
timber" to be manufactured "in the most profitable manner, by cutting
it so as to be most acceptable to buyers, or putting it into boards or
framing, or placing it on refuse skids until an order is reached that
will consume it," but which does not state the lengths of lumber to be
sawed, may be explained by aliunde evidence of "Savannah specifica-
tions." But where the proof offered to define "Savannah specifications"
does not limit the lineal dimensions to a particular length, and the
written contract is not otherwise ambiguous upon the subject of lengths
into which the lumber is to be sawed, the written contract can not be
varied by proof of a previous or contemporaneous parol agreement be-
tween the parties that the length of lumber, except in certain instances,
should not be sawed so as to exceed 20 feet.

Submitted December 2, 1907.—Decided May 16, 1908.

Action on contract.    Before Judge Hammond.    Richmond supe-
rior court.    July 20, 1907.

*William H. Fleming,* for plaintiff.

*C. H. & R. S. Cohen,* for defendant.

ATKINSON, J.    R. E. Ramsey instituted suit against Thomas
W. Pilcher for damages, based upon the alleged breach of the fol-
lowing written contract: "Georgia, Richmond county.    Know all
men by these presents that R. E. Ramsey, of the county of Co-
lumbia and State aforesaid, and Thos. W. Pilcher, of the county
of Richmond and State aforesaid, have this day entered into an

agreement for the purpose of cutting and marketing a lot of timber belonging to T. W. Pilcher, near Allen's Station in said county, and the following are the articles of agreement touching the same: 1. That said R. E. Ramsey agrees on his part to erect a first-class sawmill, with suitable machinery and a new 52-inch saw, on the premises of the said T. W. Pilcher, near Allen's Station, on what is known as the 'Stetson' place, on or by July 10, 1906, and to cut all the pine timber on said land which will measure as much as 16 inches in diameter two feet above the ground, and anything that will square six inches at the top. 2. All lumber shall be sawed as per Savannah specifications, and delivered on the cars at Allen's station, said R. E. Ramsey to render unto the said Pilcher an itemized bill of each car of lumber shipped, with bill of lading to consignee attached to same. 3. All boards shall be sawed in uniform lengths, widths, and thickness, lengths 8-10, 12, 14, 16 feet, widths 4 in. full to 14 in. full, thicknesses 3-4 in. to 1,3-4 inches, running in 1-4s, and all boards not shipped immediately shall be piled promptly, 3-4 in. boards together, 1 in. boards together, and so on, each pile to have three rows of strips entirely through, to prevent boards from warping or blueing. 4. The said R. E. Ramsey agrees further to manufacture every stick of timber in the most profitable manner, by cutting it so as to be most acceptable to buyers, or putting it into boards or framing, or placing it on refuse skids until an order is reached that will consume it, and all buttings and blocks from said mill shall be thrown aside at the disposal of said Pilcher, except such firewood as may be used by the employees of the mill, or in the operation thereof; also to use no lumber himself except such an amount as will be necessary in the erection of mill shelters and shanties for operatives on the land of said Pilcher. 5. The said T. W. Pilcher agrees on his part to allow the said Ramsey to cut all the pine timber on his premises suitable for manufacturing into lumber as above stated (to be cut and taken from the stump), but all tops and laps to remain the property of the said Pilcher, except as may be necessary for the engine of the mill. 6. The said Pilcher agrees further on his part to furnish necessary site for mill and operatives' houses and road privileges wherever necessary for the getting out of timber, expecting the said Ramsey, however, to run such roads in a way to be least damaging to the land and with due regard to pro-

43

tection of open fields. 7. T. W. Pilcher agrees to pay as compensation to the said R. E. Ramsey, for the services to be rendered in cutting said lumber, $7.50 per thousand feet sawed, according to the measurements of a man to be employed by the mutual agreement of both parties, one half of the expenses to be borne by each, payable on the 10th day of each month for all lumber sawed the previous month, and to be made according to the inspection of the buyer of the lumber; and should the said Ramsey require an advance on lumber cut to meet incidental expenses, to pay him 75% of said price less the regular freight rate to shipping point. In witness of the foregoing agreement, both parties have thereto affixed their hands and seals in duplicate this 26th day of June, 1906. [Signed] T. W. Pilcher (L. S) ; R. E. Ramsey (L. S.)."

On the trial the plaintiff submitted evidence tending to define "Savannah specifications," as referred to in the contract; and the evidence with respect thereto failed to show any limit as to the length of marketable lumber. In addition to the written contract and the evidence tending to define "Savannah specifications," the plaintiff also proposed to show, by parol evidence, that prior to and contemporaneously with the execution of the written contract, he and the defendant had agreed in parol that no timber should be sawed exceeding 20 feet in length, with the exception of a few pieces for the personal use of the defendant. Upon objection the court excluded the testimony. All of the assignments of error relate to rulings that parol evidence to the effect indicated would vary the terms of the written contract, and consequently that it was inadmissible. The plaintiff contended that the written contract was silent upon the subject of lengths into which the lumber was to be sawed, and that, the writing being silent upon that point, it was competent by parol to show a contemporaneous understanding between the parties that there should be a limit to the length of the lumber to be cut. We do not think that the written contract was silent with respect to the various lengths into which the lumber was intended to be cut. It will be observed that the written contract contemplates a conversion of standing trees of various sizes into lumber and boards, to be sold on the market. With respect to boards, specific widths, lengths, and thicknesses are stated, but there is no attempt to specify the dimensions into which lumber should be sawed. The contract contemplates the cutting

of pine trees on the land, which would measure 16 inches in diameter two feet above the ground, and which would square six inches at the top, without regard to the length. To convert the tree, after it is cut, into lumber sawed according to "Savannah specifications," which, under the evidence, provide no limit as to length, and also "in the most profitable manner by cutting it so as to be most acceptable to buyers," involves sawing the lumber into such lengths as the tree would make and the market may demand, which may be greater or less than 20 feet. The written contract, fairly construed, binds the plaintiff so to saw the lumber. In other words there is a necessary inference, from the written contract, that the lumber is to be sawed in such lengths as the trees may justify and the market may demand. The contract excludes the idea of an arbitrary limit as to the length into which the lumber should be sawed. The effect of the contemporaneous parol contract sought to be established by the plaintiff would be to vary the writing, by fixing the limit to the length of the lumber to be sawed, so that the plaintiff could not be required to saw lumber exceeding 20 feet in length, although the trees may have been capable of making lumber of greater length and there may have been a market for lumber only of a greater length than 20 feet. The variation is manifest and substantial; and under a familiar rule (Civil Code, §3675; *Forsyth Mfg. Co.* v. *Castlen,* 112 *Ga.* 199 (7), 37 S. E. 485, 81 Am. St. R. 28), there was no error in refusing to admit the evidence. *Judgment affirmed. All the Justices concur.*