60820. TURNER d/b/a ALL-PRO SPORTING GOODS v. CLARK & CLARK et al.

CARLEY, Judge.

Appellant Turner leased unfinished space in a shopping center and in order to render the space suitable for retailing, Turner entered into a written contract with Clark & Clark (Clark) as general contractors to perform certain work. Clark, in turn, utilized the services of subcontractors where necessary, including Hawkins Plumbing Company, who was engaged to install a sprinkler fire extinguishing system. After the sprinkler system had been

completely installed, it was tested and approved by city fire inspectors, and accepted by Clark and, apparently, by Turner also. When the construction project had been almost fully completed, Turner began to move merchandise into the store. Within a few days of the projected opening, a valve in the fire extinguishing system ruptured flooding the premises and damaging a large part of Turner's stock. Turner was insured against the loss and his claim was paid by his insurer. It is not disputed that Turner's insurer had been originally recommended by Clark during a conversation concerning insurance coverage which had occurred early in the construction stage.

The instant action was brought against Clark in two counts, one in tort and the other for breach of contract. Clark moved for summary judgment on the tort count. The trial court granted Clark's motion and no appeal is taken from that order. Subsequently, Clark, relying on the holding in *Tuxedo Plumbing &c. Co. v. Lie-Nielsen,* 245 Ga. 27 (262 SE2d 794) (1980) moved for summary judgment on the breach of contract count urging that the evidence demonstrated without conflict a mutually exculpatory agreement. Clark's motion for summary judgment was granted as to this count and Turner appeals.

1. " '[W]here parties to a business transaction mutually agree that insurance will be provided as a part of the bargain, such agreement must be construed as providing mutual exculpation to the bargaining parties who must be deemed to have agreed to look solely to the insurance in the event of loss and not to liability on the part of the opposing party.' [Cits.]" *Tuxedo Plumbing,* 245 Ga. 27, 28, supra. Turner first urges that *Tuxedo Plumbing* is distinguishable on its facts and has no application in the instant case. Noting that the exculpatory provision in *Tuxedo Plumbing* was part of the written contract between the parties, Turner argues that since the purported agreement relied upon by Clark to show that insurance was "part of the bargain" is oral and, therefore, under the parol evidence rule it cannot be asserted so as to contradict, alter, add to, or vary the written contract which otherwise exists between the parties in the instant case.

While we do not disagree with Turner's statement of the parol evidence rule, we find unpersuasive his contention that it has application in the instant case and that the parol evidence rule militates against Clark's reliance upon the holding in *Tuxedo Plumbing.* The written contract between Turner and Clark provides, in part, as follows: "In consideration of the performance of the Contract, the Owner [Turner] agrees to pay the Contractor [Clark] in current funds as compensation for his services a Contractor's Fee as follows: [Turner] agrees to pay [Clark] cost plus $2,500.00, with

guaranteed maximum of $30,500.00. [Clark] is to receive 33% of amount below $30,500.00 . . . The term Cost of the Work shall mean costs necessarily incurred in the proper performance of the Work and paid by the Contractor. Such costs . . . shall include . . . Cost of premiums for all bonds and insurance which [Clark] is required by the Contract Documents to purchase and maintain." While Turner asserts the above quoted provision controls on the question of insurance procurement and the contract is, therefore, insulated from variance by the parol evidence rule, it is clear that the provision "controls" on the question of insurance — making certain premiums and element of the cost of the work—only to the extent that the "Contract Documents" required Clark to purchase and maintain insurance and no other document or part of the contract "required" Clark to obtain and/or maintain insurance. Thus, the written contract is completely silent as to the intent of the parties as to who would procure the insurance in question and whether it would be "part of the bargain." In such circumstances a party is not precluded from proving the existence of a separate oral agreement as to which the basic written document is silent and which is not inconsistent with its terms. See *Forsyth Mfg. Co. v. Castlen,* 112 Ga. 199 (37 SE 485) (1900); *Kollen v. High Point Forest,* 104 Ga. App. 713, 715 (123 SE2d 10) (1961). An oral contract is legal and equally as enforceable as a written contract in an action at law. *Venable v. Block,* 138 Ga. App. 215 (225 SE2d 755) (1976).

2. Having determined that *Tuxedo Plumbing* is not inapplicable on its facts, we turn to the question of whether the evidence demonstrates no genuine issue of material fact remains with regard to the existence of an agreement between the parties "that insurance will be provided as a part of the bargain." When deposed, Turner was asked if he remembered having a conversation with Clark's Secretary concerning insurance coverage. Turner answered: "To the best of my knowledge I can remember talking about insurance to cover, you know, I was going to have to have insurance to cover my merchandise and fixtures, and everything. I was going to have to have insurance, which is understandable and I really don't remember how the conversation started or what, but then we were talking about insurance companies and recommendations, and then I began contacting them and getting quotes from different ones." When further questioned as to whether this conversation with Clark's agent *might have been* to the effect that "you could come out better by getting [insurance] yourself," Turner stated: "If that's so, like I say I do not remember that. I do not remember the beginning of the conversation about insurance. I can remember talking about insurance and I did take out insurance, but as far as [an] insurance

conversation between me and Clark & Clark that's the best or the most I can remember about it." Subsequently, in support of the motion for summary judgment, Clark offered the affidavit of its Secretary which stated in effect that Turner had been encouraged to obtain insurance covering the store during the construction phase and limit his financial obligation under the terms of the cost-plus contract by not having the premiums included in the Cost of the Work, which would be the case if Clark obtained its own insurance and paid the premiums. Clark's affidavit further stated that Turner agreed that he, not Clark, would purchase the insurance and that "[p]ursuant to this agreement which supplemented the written contract entered into between the parties" Turner purchased insurance from one of the agents suggested to him by Clark. Turner's affidavit was submitted in opposition to the motion for summary judgment stating: "I recall a conversation with Dale Clark concerning recommended insurance agents in Gainesville, but I do not recall, nor was it my understanding that I was to obtain coverage in lieu of his builder's risk insurance . . . [A]t no time was there any mutual agreement or understanding either written or oral that I was to provide the insurance protection under the contract." Thus, when viewed solely in the context of the opposing affidavits, there remains a genuine issue of material fact concerning Turner's procurement of the insurance. According to Clark's affidavit, it was mutually agreed that Turner, not Clark, would secure insurance covering the risk of loss during construction so as to lessen the contract price and that this agreement was thus "part of the bargain." Turner's affidavit, on the other hand, states that there was no such "mutual agreement" and that, in effect, the insurance procured was solely for his benefit and not part of his bargain with Clark. However, the trial court in granting summary judgment concluded that Turner's affidavit unequivocally denying the existence of a "mutual agreement" was contradictory of his prior deposition testimony in which he did not deny the existence of such an agreement but stated that he did not remember the entire conversation. Applying *Chambers v. C. & S. Nat. Bank,* 242 Ga. 498 (249 SE2d 214) (1978), the trial court concluded that only Turner's "unfavorable" deposition testimony would be considered and granted Clark summary judgment.

We believe the trial court erred in applying *Chambers* and, consequently, in granting summary judgment. While in his deposition testimony Turner did not *deny* the existence of a specific agreement concerning the procurement of insurance, he did not at any time *admit* any contract or undertaking "to purchase the insurance covering the premises while under construction" as was unequivocally asserted by Clark in its subsequent affidavit; Turner's

deposition testimony was merely that he could not remember all the conversation. Turner's affidavit was his *first opportunity* to contravene a direct and unequivocal assertion of the existence of such an agreement made for the first time by way of Clark's supporting affidavit and he did so by unequivocally denying it. Clearly one may be unable to "remember" a portion of a conversation and fail to deny the existence of an as yet unasserted "mutual agreement" allegedly arising from that conversation and still, without being contradictory, be able to deny a subsequent unequivocal assertion of the existence of such "mutual agreement." Turner's deposition testimony shows only that he and Clark had a conversation—all of which he could not recall—concerning insurance and that he subsequently procured insurance. Clark's affidavit asserts for the first time the contention that Turner's procurement of the insurance was the result of a "mutual agreement" reached in the conversation. Turner's affidavit denies that his procurement of insurance was the result of a "mutual agreement" reached in the conversation. Under this evidence a conversation concerning insurance indisputably took place but there is a conflict—which arose only in the affidavits—as to whether this conversation resulted in a "mutual agreement." Thus, while Turner's affidavit clearly conflicts with Clark's, it cannot be said that Turner's affidavit is in material conflict with any position asserted by him in his deposition. Therefore, *Burnette Ford, Inc. v. Hayes,* 227 Ga. 551 (181 SE2d 866) (1971) mandates that Turner receive the benefit of all favorable inferences and that the evidence be construed most favorably for him. Such a construction requires that the grant of summary judgment to Clark be reversed because of the existence of a genuine issue of material fact: Whether there was a mutual agreement reached in the conversation that Turner procure insurance as a "part of the bargain" between the parties.

Even assuming arguendo the existence of a material conflict between Turner's deposition and affidavit testimony, *Chambers* nonetheless has no application in this case. In *Combs v. Adair Mtg. Co.,* 245 Ga. 296, 297 (264 SE2d 226) (1980), the Supreme Court held: "The holding in *Chambers does not lighten the burden upon the movant for a summary judgment* nor does it add any additional weight to the burden upon the responding party. *Chambers* simply reiterates the long recognized and established rule that any party testifying in his own behalf is held to a strict standard of candor and responsibility for his own statements and has no right to be intentionally or deliberately self-contradictory. The effect of the *Chambers* holding is that if a party testifying in his own behalf intentionally or deliberately contradicts himself, the more favorable portion of the contradictory testimony shall be treated as though it

did not exist . . . *[t]his court continues to adhere to the rule enunciated in Burnette Ford, Inc. v. Hayes, supra, and views the holding in Chambers v. Citizens & Southern National Bank, supra, as one which came about as a result of factual differences.* " (Emphasis supplied.)

Any "conflict" in Turner's testimony cannot be characterized as "deliberate or intentional." Turner's affidavit testimony was "deliberate and intentional" only in the sense that it was filed in opposition to a motion for summary judgment supported by an affidavit which for the first time unequivocally asserted the moving party's contention that there existed a "mutual agreement" for Turner to procure insurance which was a "part of the bargain" between the parties. It is obvious that an affidavit denying the assertions of an opposing party's affidavits is "deliberate and intentional" testimony. However, there is no logical basis for saying that merely because an affiant's subsequent testimony is "intentional or deliberate" he thereby creates an intentional and deliberate *conflict* with his prior testimony. This is especially true when, as here, the affidavit is merely supplemental and not truly contradictory of the deposition testimony. There is simply no basis in the record before us for holding that a conflict, if any, in Turner's testimony was intentionally or deliberately created by him within the meaning of *Combs,* supra. See *Combs v. Adair Mtg. Co.,* 155 Ga. App. 432 (270 SE2d 828) (1980).

A genuine issue of material fact remains as to whether or not the parties entered into a "mutual agreement" in their conversation whereby Turner was to procure insurance as a "part of the bargain" with Clark. It was, therefore, error to grant Clark summary judgment. Whether or not such an agreement if entered into would be a "waiver of subrogation clause" within the holding of *Tuxedo Plumbing* is, of course, a question which must be addressed if and when the existence of a "mutual agreement" between the parties and the terms of such agreement are established as matters of law.

*Judgment reversed. Quillian, C. J., Deen, P. J., McMurray P. J., Shulman, P. J., and Banke, J., concur. Birdsong, Sognier and Pope, JJ., dissent.*

DECIDED MARCH 20, 1981.

*Harmon T. Smith, Jr.,* for appellant.
*Weymon H. Forrester,* for appellees.

BIRDSONG, Judge, dissenting.

Though I have no disagreement with Division 1 of the majority opinion, I have considerable difficulty reconciling Division 1 with

Division 2 inasmuch as I am in much disagreement with two key portions of that division.

The majority bases its conclusion in Division 2 upon two major premises that (1) there is no conflict between the deposition testimony of Turner and his subsequently made affidavit but (2) even assuming such a conflict to be evident, there is no justification to proclaim that conflict as having been deliberately or intentionally made.

There can be no question as to the existence of insurance coverage over the premises and contents of Turner's store. Turner readily admits that sometime after the store was being remodeled, he (Turner) discussed insurance needs with Clark and obtained insurance from an agency suggested to him by Clark. That is corroborated by the agent who sold the insurance to Clark. There obviously was no dispute as to the purpose of the insurance for after his loss, Turner made demand upon and recovered from his insurer most if not all his loss. The confrontation occurred only after Turner's insurer had covered Turner's loss and apparently sought to be subrogated by belatedly relying on the insurance provisions of the building contract discussed in Division 1 of the majority opinion. Thus, Turner's statements (that he recalled a conversation about insurance but did not recall its substance other than that it concerned insurance and agents) in my ears ring somewhat hollow.

A reading of Turner's deposition while under examination by Clark's attorney discloses the following:

"Q. Isn't it true, or I want you to correct if you remember anything other than this, that there was a discussion between you and Dale [Clark] about the necessity or advisability of you having these premises covered and that it was a question of whether they could get the coverage or whether you could get it on your own, and if you got it they wouldn't get charged a fee on this percentage for the premiums that were paid, in other words, you could come out better by getting it yourself?

"A. If that's so, like I say I do not remember that. I do not remember the beginning of the conversation about insurance. I can remember talking about insurance and I did take out insurance, but as far as insurance conversation between me and Clark & Clark that's the best, or the most I can remember about it.

"Q. Right. But following whatever conversation you did have you bought this insurance through Day, Reynolds and Parks to take care of losses which you might have; is that correct?

"A. That's right."

Turner's deposition was taken on September 26, 1978. On March 25, 1980, Clark moved for summary judgment. In support of

that motion Clark submitted an affidavit in which he alleged that "when dealing with Mike Turner concerning the construction of the All-Pro Sporting Goods Store, I had a conversation with him which resulted in it being agreed that he, not Clark and Clark, Inc., would purchase insurance to protect against losses during the period of construction. Having reached this agreement, I suggested the names of several agents in Gainesville that he might contract [sic]. Two of those suggestions were Carl Lawson Agency and Ronald Clary of Day, Reynolds and Parks, Inc. Pursuant to this agreement which supplemented the written contract entered into between the parties, Mr. Turner purchased insurance for these premises through Day, Reynolds, and Parks, Inc."

Ronald Clary submitted an affidavit on behalf of Clark in which Clary confirmed that Turner obtained insurance covering merchandise, furniture, fixtures and "betterments and improvements." This latter term is commonly used in the insurance industry as referring to improvements that a tenant makes on property which he does not own, such as in an arrangement between a store proprietor and a shopping center when the owner retains title to the real estate but has an agreement whereby the tenant makes expenditures for improvements.

I believe it is safe to conclude that at this stage of the proceedings (i.e., before Turner submitted his affidavit), that summary judgment for Clark was inevitable. Clark had established by affidavit an agreement between the parties for Turner to obtain his own insurance coverage to save Turner money in the cost-plus contract; Turner had not denied this agreement; pursuant to the agreement Turner had obtained such insurance; Turner had suffered a loss; and Turner had recovered from his insurer without making demand against Clark based upon the building contract.

However, Turner eventually submitted his own affidavit on April 18, 1980, to defeat Clark's motion for summary judgment. In that affidavit Turner in effect stated that he recalled a conversation with Dale Clark concerning recommended insurance agents in Gainesville, but "I do not recall, nor was it my understanding that I was to obtain coverage in lieu of his builder's risk insurance."

I cannot help but reflect that this affidavit was made almost 19 months after Turner's deposition, in direct response to a motion for summary judgment, and which affidavit, if believed, would save a case which apparently Turner would otherwise lose. It strains my understanding of commonly used language to believe his agreement with the question in the deposition of September, 1978 that "whatever conversation you did have, you bought this insurance through Day, Reynolds and Parks to take care of losses which you

might have; is that correct" is not directly contradicted by his affidavit wherein he affirmed that "I do not recall, nor was it my understanding that I was to obtain coverage in lieu of his builder's risk insurance." This conclusion is especially demanded where the facts reflect that Turner obtained the very coverage in question, and when he suffered a loss, he obtained reimbursement from his insurer rather than the contractor. It is because of these type agreements that *Tuxedo Plumbing &c. Co. v. Lie-Nielson,* 245 Ga. 27 (262 SE2d 794) provides to bargaining parties mutual exculpation and requires the party suffering a loss to look solely to his insurer.

It is my opinion, therefore, that there is indeed a direct conflict between Turner's deposition of September, 1978, and his affidavit of April, 1980. In *Combs v. Adair Mtg. Co.,* 245 Ga. 296, 297 (264 SE2d 226), it was held: "The holding in *Chambers [Chambers v. C & S Nat. Bank,* 242 Ga. 498 (249 SE2d 214)] does not lighten the burden upon the movant for a summary judgment nor does it add any additional weight to the burden upon the responding party. *Chambers* simply reiterates the long recognized and established rule that any party testifying in his own behalf is held to a strict standard of candor and responsibility for his own statements and has no right to be intentionally or deliberately self-contradictory. The effect of the *Chambers* holding is that if a party testifying in his own behalf intentionally or deliberately contradicts himself, the more favorable portion of the contradictory testimony shall be treated as though it did not exist." If Turner's affidavit is taken to be in direct conflict with his deposition, then *Combs* dictates that summary judgment for Clark was proper.

However, the majority contends that even if the statements are taken to be in conflict, there is no indication that they were deliberately or intentionally made. It is conceded that Turner has not openly admitted that he deliberately and intentionally made conflicting statements. But I do not conceive such an admission to be necessary in order for this court to find that conflicting statement fails to reflect the requisite standard of candor and responsibility, and therefore such conflicting statements may be inferred to have been made "deliberately or intentionally." While it runs contrary to the usual practice for an appellate court to make such a factual determination (see special concurrence in *Combs v. Adair Mtg. Co.,* 155 Ga. App. 432, 436 (270 SE2d 878)) that determination is a responsibility created by our case law and followed by both the Supreme Court and this court. Such a factual weighing and determination was made by the Supreme Court in both *Combs,* 245 Ga. 296, supra, and *Chambers,* supra, and by this court in *Combs* 155 Ga. App. 432, supra, as well as in the majority opinion where the

majority has concluded, after noting the absence of an admission by Turner of deliberateness that the conflict was not intentional or deliberate, while I conclude to the contrary as a matter of law.

I believe that if this court establishes as a requirement that the maker of conflicting statements must admit that the statements were deliberately made (i.e., not claim inadvertence or deny deliberateness), then this court has emasculated the summary judgment procedure. If this were not true, then every respondent to a motion for summary judgment could avoid the consequences of a sure summary judgment against him by making belated but inconsistent statements (thus creating a conflict of fact) and arguing that such conflicts were inadvertent.

We are not here dealing with a complex case involving many parties and counsel where amidst numerous depositions, interrogatories and affidavits usually all being rendered prior to a motion for summary judgment, discrepancies may creep into a party's recollection of long past events. Here we deal with a deposition given 19 months before any motion for summary judgment in which the deponent agreed that he obtained the insurance to take care of any losses he might have, but when faced with an apparent adverse summary judgment ruling, contended that he did not understand that he was to obtain insurance coverage in lieu of Clark's builder's risk insurance.

Determinations of the presence or absence of conflicting issues in motions for summary judgment by their very nature are mixed questions of fact and law but in our procedure are ultimately questions of law to be decided by a trial court. While the trial court cannot decide conflicting questions of ultimate fact, the Supreme Court in *Chambers,* supra, and *Combs,* supra, in effect, required the trial court and, on appeal, this court, to eliminate questions of fact arising in a summary judgment situation where a party has created conflicting positions by, in essence, admitting liability and thereafter denying it (or vice versa). In such a situation, in order to preserve the summary judgment procedure, the Supreme Court has mandated that the evidence must be taken in the light most unfavorable to the creator of the confusion.

I believe the most salutory rule, and the one that best preserves the summary judgment procedure, is one that recognizes that where, except for a belated and conflicting position adopted by a party in the course of a motion for summary judgment, summary judgment would be granted to the opposing party (i.e., the conflicting position puts the party back in court), the trial court is required to conclude that the conflicting position has been deliberately and intentionally taken. To conclude otherwise eviscerates any motion for summary

judgment. Applying that rule to the present case it calls into play the well-accepted and pragmatic rule that the version of Turner's testimony which is most unfavorable will be accepted. *Chandler v. Gately,* 119 Ga. App. 513, 520 (167 SE2d 697). See *Collins v. Levine,* 156 Ga. App. 502. Accordingly, I would affirm the trial court's grant of summary judgment to appellee Clark.

I respectfully dissent. I am authorized to state that Judge Sognier and Judge Pope join in this dissent.